## St. Louis Southwestern Railway Company v. Arkansas & Texas Grain Company.

### Decided February 24, 1906.

**1.—State Regulation of Commerce.**

A State statute providing the terms upon which warehousemen, commission merchants or common carriers may sell goods, merchandise or other property not claimed or received by the owner or consignee, does not encroach upon the power conferred on Congress to regulate commerce among the several States. The commercial power of Congress is exclusive of State authority only where the subjects upon which it is exerted are national in their character and admit and require uniformity of regulation affecting alike all the States. When the subjects within that power are local in their nature, or constitute mere aids to commerce, the States may act until Congress intervenes and supersedes their action.

**2.—Same—Pleading.**

Because defendant failed to plead that the shipment was an interstate shipment it can not make this contention on appeal for the first time.

**3.—Unclaimed Freight—Statutory Provisions.**

Where a statute prescribes a course to be pursued by a common carrier where freight is unclaimed, the common law is thereby superseded, and a failure to follow the provisions of the statute will render the carrier liable for the value of the freight.

**4.—Evidence.**

A witness testified that the corn in question was classed as "No. 2 corn," and that he had sold a part of the same carload to other parties as No. 2 corn, and no complaint was ever made by any of the purchasers. The issue being sharply drawn as to the class or quality of the corn, the evidence was material, and was not hearsay.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*S. H. West,* and *Glass, Estes & King,* for appellant.—The shipment of the corn in question being from Texarkana, Texas, to Camden, Arkansas, was an interstate one; and the statute of the State of Arkansas providing for the sale of goods that have remained in the possession of a common carrier for six months could not be applied to and govern such a shipment, and if goods so shipped were perishing, and would, if kept for six months, become worthless, the railroad company had the right, and it was its duty to dispose of the corn for the best price obtainable, where both the consignor and consignee refused to receive it. Hanley v. Kansas City S. Ry., 187 U. S., 617; Gloucester Ferry Co. v. Pennsylvania, 114 U. S., 196; Fargo v. Michigan, 121 U. S., 230; Leisy v. Hardin, 135 U. S., 100; Rhodes v. Iowa, 170 U. S., 412; Texas & Pac. Ry. v. Richmond, 94 Texas, 574; Harman v. City of Chicago, 147 U. S., 404.

The carload of corn in question having been tendered by the appellant to Ritchie & Company, upon condition that it would surrender the bill of lading, and Ritchie & Company having refused to receive it, and the appellee and consignor also having refused to receive the corn or give any directions about the disposition of it, and the grain being liable to damage and waste, appellant had the right to sell the same, and as it acted in good faith and sold the same for the best price obtainable, to prevent loss to the appellee, it was the agent of appellee, and not liable beyond the price obtained for the corn. Hull v. Missouri Pac. Ry., 60 Mo. App., 594; American Express Co. v. Smith, 31 Am. Rep., 561; Steamboat Keystone v. Moies, 28 Mo., 243; Lesinsky v. Great Western Dispatch Co., 13 Mo. App., 575.

Where goods are shipped from one State to another, and the consignee refused to receive them from the railroad company; and the consignor refuses to receive them, or give any direction about their disposition, and said goods are in a damaging condition, and can not be kept safely, it is the right and the duty of the railroad company to dispose of them for the highest price obtainable, if it is necessary to prevent their waste or deterioration in value. And if it acts in good faith and sells the property for the highest price obtainable, it will be considered the agent of the consignor or owner of the goods, and liable, to him, only for the price obtained from such sale. Hull v. Missouri Pac. Ry., 60 Mo. App., 594; American Ex. Co. v. Smith, 31 Am. Rep., 561; Steamboat Keystone v. Moies, 28 Mo., 243; Lesinsky v. Great Western Dispatch Co., 13 Mo. App., 575; Missouri, K. & T. Ry. v. Rogers, 91 Texas, 52.

It was error to admit testimony as to what disposition was made of the balance of the same lot of corn, out of which the shipment to Ritchie & Co. was made, because that was immaterial; and it was error to admit testimony that said balance of said lot of corn was sold to the retail dealers in Texarkana as No. 2 corn, and that they failed to make any complaint, a disputed issue being as to whether or not the corn shipped to Ritchie & Co. was No. 2 corn, because said testimony was immaterial, irrelevant and hearsay. Rankin v. Bell, 85 Texas, 32; Gulf, C. & S. F. Ry. v. Rowland, 82 Texas, 166; Ross v. Kornrumpf, 64 Texas, 390.

*Chas. S. Todd,* for appellee.—The court did not err in its charge in telling the jury that "the railroad company having sold the car of corn in violation of the statute of the State of Arkansas, the sale was illegally made and operated a conversion of said corn by the railroad company which rendered it liable to plaintiff." Sayles' Rev. Stats., art. 3258; same, final title, sec. 3; Gulf, C. & S. F. Ry. Co. v. North Texas Grain Co., 74 S. W. Rep., 567.

BOOKHOUT, Associate Justice.—Appellee brought this suit in the District Court on September 9, 1903, there being two separate causes of action set up in its petition. The second count or cause of action was abandoned on the trial, and will not be further referred to.

The cause of action upon which a recovery was had, is alleged in its petition, as follows: That on the 10th day of July, 1903, the appellee delivered to appellant a carload of corn to be transported from Texarkana to Camden, the latter place being situated in Arkansas; that the corn was consigned to shipper's order, notify Ritchie & Company, and had been sold to Ritchie & Company for $519.16 (five hundred and nineteen dollars and sixteen cents) to be paid for before delivery by appellant. That appellee drew a draft on Ritchie & Company for five hundred and nineteen dollars and sixteen cents ($519.16) and attached the same to the bill of lading and deposited the same in the bank for collection, and that Ritchie & Company failed to pay same and failed to obtain possession of said bill of lading; but that notwithstanding said failure by Ritchie & Company to pay said draft and take up said bill of lading, the appellant wrongfully and without authority delivered said corn to Ritchie & Company and wrongfully and unlawfully converted said corn to appellant's own use; that appellant negligently and unreasonably delayed transportation of said corn after receipt by it, and if the same was in a damaged condition when delivered to Ritchie & Company such damage was caused by the delay and negligence of defendant in failing to transport same with proper dispatch.

The defendant answered first by general denial, and further answered specially that on the 10th day of July, 1903, it received the carload of corn consigned to shipper's order, notify Ritchie & Company, and within a reasonable time it carried said car of corn to Camden, and notified Ritchie & Company of the arrival of said corn. That Ritchie & Company, or some one of them, without the knowledge or consent of appellant, opened the door of the car and took out a sample of the corn, and then notified appellant that it would not take the corn because of its being in a rotten and bad condition; that the appellant then notified appellee that Ritchie & Company had refused to receive and take said corn, and that appellee refused to make any disposition of it or give any directions about the disposition of it. That appellant then notified appellee that unless Ritchie & Company or appellee would take charge of the corn, the same would be sold on account of whom it might concern. That appellee, with full knowledge of the situation and the fact that Ritchie & Company

would not receive the corn, refused to make any disposition of it or give any directions about what should be done with it; that by reason of the bad condition of the corn, it was rotting and damaged when it reached Camden, and unless some disposition was promptly made of the same it would become entirely worthless; and for the purpose of preventing further deterioration and waste, and to prevent a total loss of the corn, appellant sold the same for the highest price obtainable, and tendered to appellee the sum of two hundred and ten dollars ($210), the amount received therefor; and that it acted as the agent of appellee in making said sale; that at that time there was no statute law of the State of Arkansas prescribing or regulating the sale of perishable goods in the hands of railway companies; that the only law on the subject was that when goods had remained in the possession of a common carrier or warehouseman for six months, without being claimed, they could be advertised and sold. It was alleged by appellant that to have held the corn for six months would have rendered it entirely worthless; that it could not be preserved, and that it was sold to the best advantage possible, and that it is therefore responsible to the plaintiff only for the amount of the proceeds of the sale of the corn, which amount it tendered and offered to pay.

The appellee replied by supplemental petition, pleading the statute law of the State of Arkansas, which provided that when any goods, merchandise or other property shall have been received by any warehouseman, commission merchant or common carrier, and shall not have been claimed or received by the owner, consignee or other authorized person for the period of six months, it shall be lawful for such warehouseman, commission merchant or common carrier to sell such goods, after having given twenty days notice of the time of sale, etc. Also, that the sale of the corn by appellant was not in conformity with said statute, and was therefore illegal and void. Appellee also denied that the corn was perishable property, or in danger of total loss.

The case was tried on March 4, 1905, at a special term of the District Court, and judgment rendered in favor of appellee for the sum of three hundred and ninety-two dollars and sixty-six cents ($392.66). Defendant perfected an appeal.

1. The first question that arises is, was the shipment an interstate shipment, and if so, does the statute of Arkansas, providing the terms upon which warehousemen, commission merchants or common carriers may sell goods, merchandise or other property not claimed or received by the owner or consignee, apply?

In the case of Hall v. DeCuir, 95 U. S., 487, Chief Justice Waite, in discussing the commerce clause of the Constitution, uses the following language: "There can be no doubt but that exclusive power has been conferred upon Congress in respect to the regulation of commerce among the several States. The difficulty has never been as to the existence of this power, but as to what is to be deemed an encroachment upon it; for, as has been often said, 'legislation may in a great variety of ways affect commerce and persons engaged in it without constituting a regulation of it within the meaning of the Constitu-

tion.' Sherlock v. Alling, 93 U. S., 103; State Tax on Railway Gross Receipts, 15 Wall., 284. Thus, in Munn v. Illinois, 94 U. S., 113, it was decided that a State might regulate the charges of public warehouses, and in Chicago, Burlington & Quincy Railway Co. v. Iowa, id., 155, of railroads situate entirely within the State, even though those engaged in commerce among the States might sometimes use the warehouses or the railroads in the prosecution of their business. So, too, it has been held that States may authorize the construction of dams and bridges across navigable streams situate entirely within their respective jurisdictions. Willson v. Blackbird Creek Marsh Co., 2 Pet., 245; Pound v. Turck, supra, p. 459; Gilman v. Philadelphia, 3 Wall, 713. The same is true of turnpikes and ferries. By such statutes the States regulate as a matter of domestic concern, the instruments of commerce situated wholly within their own jurisdictions, and over which they have exclusive governmental control, except when employed in foreign or interstate commerce. As they can only be used in the State, their regulation for all purposes may properly be assumed by the State, until Congress acts in reference to their foreign or interstate relations. When Congress does act, the State laws are superseded only to the extent that they affect commerce outside the State as it comes within the State. It has also been held that health and inspection laws may be passed by the States, Gibbons v. Ogden, 9 Wheat., 1; and that Congress may permit the States to regulate pilots and pilotage until it shall itself legislate upon the subject, Cooley v. Board of Wardens, etc., 12 How., 299."

In the case of Main v. Grand Trunk Railway Company, 142 U. S., 217, it was held that a statute of the State of Maine requiring every corporation, person or association operating a railroad within the State to pay an annual tax for the privilege of exercising its franchises therein to be determined by the amount of gross transportation receipts, and further providing that, when applied to a railroad lying partly without the State, or to one operated as part of a line, or system, extending beyond the State, the tax should be equal to the proportion of the gross receipts in the State, to be ascertained in the manner provided by the statute, does not conflict with the Constitution of the United States; and the tax thereby imposed upon a foreign corporation, operating a line of railway partly within and partly without the State is one within the province of the State to levy.

This court held in the case of Missouri, K. & T. Ry. Co. v. Nelson, 87 S. W. Rep., 706, that articles 4560f and 4560h, of the Revised Statutes of 1895, making railway companies liable for the negligence of a servant affecting another servant, is applicable to an action for the death of a railroad engineer owing to a collision between two of defendant's trains, although the trains were at the time engaged in interstate traffic, and that such application of the statute was not violative of the commerce clause of the federal Constitution.

The commercial power of Congress is exclusive of the State authority, only when the subjects upon which it is exerted are national in their character and admit and require uniformity of regulations affecting

alike all the States, and that when the subjects within that power are local in their nature or operation, or constitute mere aids to commerce, the State may provide for their regulation and management, until Congress intervenes and supersedes their action.    Cardwell v. American Bridge Co., 113 U. S., 205.

Congress has not passed any law, or made any regulation, as to the dispositon of freight shipped from a point without a State to a consignee within a State and which such consignee declines to receive, and the owner and shipper refuses to give directions as to its disposition, or to have anything to do with it.

The State of Arkansas has taken action and by statute provided that, "when any goods, merchandise or other property shall have been received by any warehouseman, commission merchant or common carrier and shall not be claimed or received by the owner, consignee or other authorized person for the period of six months from the time the same shall have been called for, it shall be lawful for such warehouseman, commission merchant or common carrier to sell such goods, merchandise or other property to the highest bidder for cash, first having given twenty days notice of the time and place of sale to the owner or consignor, when known, and by advertisement by two insertions in the daily or weekly newspaper published in the county where such sale is to take place, the proceeds of such sale to be applied to the payment of freight, storage and charges due and the cost of advertising and making said sale, and if any surplus is left after paying freight, storage, cost of advertising and all other just and reasonable charges, the same shall be paid over to the original owner of said property at any time thereafter, upon demand being made therefor.    Railroad companies shall not charge storage for the first forty-eight hours, nor more than five cents per day after the first forty-eight hours on baggage not exceeding one hundred and fifty pounds.    A record of such sale shall be kept which shall be open to the inspection of all parties interested therein."

The contention of appellant is that this statute can not be applied in this case, for the corn was an interstate shipment.    In our opinion, the fact that the corn was shipped from a point outside of Arkansas, if it be a fact, to a consignee within that State, furnishes no reason why this statute does not apply.    The statute is general in its nature and applies in all cases where goods, merchandise, or other property has been received by any warehouseman, commission merchant, or common carrier and which the owner or consignee or any other authorized person refuses to claim or receive, and does not violate the commerce clause of the federal Constitution.

Again, will appellant be permitted to contend in this court that the shipment was interstate commerce?    The petition does not show an interstate shipment.    The answer nowhere alleges an interstate shipment, but pleads that the property was perishable, that there was no statute in Arkansas, and was sold by defendant lawfully.    Plaintiff by supplemental petition pleaded the statute of Arkansas regulating sale by common carriers and warehousemen of property in their hands, and noncompliance by defendant with said statute.    This pleading dis-

tinctly treated the shipment as a local and not an interstate shipment. Defendant made no reply by supplemental answer, not even a denial nor suggestion that the shipment was an interstate shipment or raising the issue of applicability of the Arkansas statute pleaded by plaintiff.

There was testimony that the corn was loaded in the car at the grain company's warehouse in Texarkana, Texas, in the southwestern part of the town. The bill of lading was introduced in evidence, as shown by the statement of facts, but for some reason, probably through inadvertence, is not copied therein. The record fails to show whether the bill of lading was from Texarkana, Texas, or Texarkana, Arkansas.

The corn was transported to Camden, Arkansas, and there tendered the consignees. They refused to accept or receive it. The shippers were then notified of such refusal and they refused to give instructions as to its disposition, or have anything to do with it. We are of the opinion that under the facts stated the appellant will not be heard to raise the issue in this court, for the first time, that the shipment was interstate commerce. But if originally interstate commerce it would seem that since the shipment had been consummated and both the owners and shippers, as well as the consignees had refused to receive the goods and the railroad thereupon unloaded the same in its warehouse the property thereby ceased to be interstate commerce.

2. It is contended that the trial court erred in refusing the following special charge, requested by appellant: "If you believe defendant transported said car of corn to Camden, and tendered same to Ritchie & Co., and said Ritchie & Co. refused to receive it; and that the defendant notified the Arkansas & Texas Grain Co. of such refusal, and that unless said corn was taken and accepted by Ritchie & Co., the defendant would sell the same; and that if you further believe from the evidence that the plaintiff refused to have anything to do with, and refused to give any directions about the disposition of said corn, and that said corn was in such condition that it would depreciate in value and become worthless in value from that date, and that the agent of the defendant sold the same for the highest value, at that time, and that in so doing he acted in good faith, and with ordinary care, and such care as an ordinarily careful and prudent person would have acted, under the circumstances, then the plaintiff would only be entitled to recover the price for which the said corn was so sold."

The evidence showed that said car of corn was tendered to Ritchie & Company by the defendant on July 14, 1903, and it tried to induce Ritchie & Company to accept the same, which they refused to do; that it then notified the plaintiff that unless some disposition was made of the corn, it would sell the same, and plaintiff refused to have anything to do with it; that after keeping the corn twenty days, the agent of the defendant sold it for the highest price he could get offered for it in Camden.

Under the statute of Arkansas, above quoted, the railway company was authorized to sell the corn upon the refusal of Ritchie & Company to receive the same, and the failure of the appellee to give instructions as to its disposition, but in making such sale it was its duty to comply

with the stipulations of the statute. This it failed to do and the sale must be held illegal. But it is insisted that the sale was made in compliance with the common law and was fairly made. This is no answer to its failure to follow the provisions of the statute, for the effect of the statute was to supersede the common law in respect to the manner of selling. (Gulf, C. & S. F. Ry. Co. v. North Texas Grain Company, 74 S. W. Rep., 567.)

Again, it is insisted that the statute does not apply to perishable property and the corn was in a perishable condition. The statute is general and does not in terms except perishable property from its provisions. The evidence does not show that the corn was perishable. It was moldy and in a damaged condition. But the evidence does not show that it would have continued to deteriorate in quality or, as appellant contends, would have become worthless by the time a sale could have been made under the statute. The sale not having been made in accordance with the statute it was illegal and the appellant became liable for a conversion of the corn.

3. Floyd Thompson, a witness for plaintiff and in his own behalf, testified that the car of corn shipped to Ritchie & Company and which is involved in this suit, was a part of a car of sixty thousand pounds of corn which he received in bulk on July 10, and unloaded in his place of business in bulk on same day, sacked and reshipped about 40,000 pounds of the same corn to said Ritchie & Company on same day, and that it was all No. 2 corn. Witness was then asked by plaintiff's attorney to state what was done with the balance of the 60,000 pounds. Defendant objected to the answer to this question and the question, because it was immaterial, irrelevant, hearsay and not binding on the defendant. The objection was overruled and defendant excepted, and the witness testified that he sold the balance of said 60,000 pounds of said corn to the retail dealers in Texarkana as No. 2 corn. That he sold and delivered the same to them as No. 2 corn, and no complaint was ever made by any of the purchasers of the same.

The issue was sharply drawn as to whether the corn was No. 2 mixed corn when loaded at Texarkana about July 10. Thompson had testified that it was No. 2 mixed corn, when so loaded by him, Ritchie and others testified that it was damaged and some part of it rotten when sampled at Camden on July 14, 1903. The objection of immateriality and irrelevancy is therefore not well taken. Nor do we think it was hearsay. The witness simply stated a fact within his own knowledge; that he did sell it in the course of trade as No. 2 corn, not at retail, but to retail dealers, and no complaint was ever made. These are facts and not declarations of third persons. Again, it would seem that the jury were not influenced by this evidence. Had the jury believed Thompson's testimony they should have found for the full amount sued for, $519.16 and interest. This they did not do, but instead found for $392.66. They must have found the corn was not sound No. 2 mixed corn when shipped.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Application for writ of error dismissed.