HOWARD L. SILVER, administrator, *vs.* NEW YORK CENTRAL
RAILROAD COMPANY & another.

Suffolk. March 3, 1952. — May 2, 1952.

Present: LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Negligence,* Railroad: heating of car. *Carrier,* Of passengers. *Evidence,*
Competency, Relevancy and materiality, Absence of complaint. *Law
of the Trial.*

A basic ruling made without objection at the trial of an action became
the law of the trial. [17]

Evidence that on a winter morning when it was very cold a railroad left
a passenger car standing unheated in a yard, inaccessible to a station,
for about three hours, so that a passenger of ordinary good health on
the car might have been adversely affected by the cold, would warrant
a finding of negligence on the part of the railroad toward a woman
passenger on the car who had the circulatory ailment known as Ray-
naud's disease and was susceptible to attacks from cold, and would
justify recovery from the railroad for all injury suffered by her through
an attack brought about by her exposure to the cold in the car on
that morning.

In an action against a railroad for injuries sustained by a passenger through
a cold condition of her car, it was error to refuse a ruling requested by
the defendant that it was not liable unless it "negligently permitted
the car . . . to get so cold that the health of persons of ordinary and
normal health would be endangered thereby." [18]

At the trial of an action against a railroad for injuries sustained by a
passenger through a cold condition of her car, it was not error to ex-
clude testimony by a porter as to the temperature in another car or
testimony as to absence of discomfort from cold of another passenger
not shown to have been in the plaintiff's car [18–19]; the porter of
the plaintiff's car was rightly allowed to testify as to the temperature
in that car [19]; and testimony by the porter of the plaintiff's car
that eleven other passengers in that car made no complaint to him
about the temperature therein would be admissible if the other passen-
gers were shown to be in substantially the same situation concerning
exposure to cold as the plaintiff, if the porter's duties were shown to
include the receipt of such complaints, if he were shown to have been
present and available to be spoken to, and if it were shown to be
unlikely that the other passengers complained to some other employee
of the defendant. [19–21] ·

CONTRACT OR TORT, originally brought by Frances Silver
and later prosecuted by the administrator of her estate.

Writ in the Municipal Court of the City of Boston dated April 16, 1948.

Upon removal to the Superior Court, the action was tried before *Swift,* J.

*Walter N. Kernan,* for New York Central Railroad Company.

*Thomas D. Burns,* for the plaintiff.

WILKINS, J. On January 14, 1948, Frances Silver became a passenger, bound from Boston to Cincinnati, on a train operated by the defendant railroad. The following morning the Pullman car in which she had a berth was detached at Cleveland and stood for nearly four hours in the yard to await connection with the next train to Cincinnati. She was suffering from a circulatory ailment known as Raynaud's disease. The temperature in the car became too cold for her, and she experienced ill effects. Mrs. Silver, who will be referred to as the plaintiff, brought this action against the defendant railroad and The Pullman Company. Upon her death from a cause apparently unrelated to this case, the administrator of her estate was substituted as party plaintiff. At the trial it was stipulated that if there should be a judgment for the plaintiff, it should be against the railroad, and in that event there should be a judgment for The Pullman Company. The judge found for the plaintiff against the railroad. He also found for The Pullman Company pursuant to the stipulation. The exceptions of the railroad, which will be referred to as the defendant, are to the denial of certain of its requests for rulings and to the exclusion of evidence.

Certain basic facts are not in dispute. The plaintiff, who was 58 years of age, boarded the train at Boston, on January 14, 1948, at 4:50 P.M. She occupied a lower berth in the rear car, which was the only through car to Cincinnati. The train was scheduled to arrive in Cleveland at 6:20 A.M. the following day, but did not do so until 8:40 A.M., too late for the intended connection for Cincinnati. This necessitated a lay-over in Cleveland until the next train for Cincinnati, which left at 12:30 P.M. In Cleveland the

weather bureau records show that the temperature at 5:35 A.M. was one degree below zero Fahrenheit and 26 degrees above zero at 9 P.M. The plaintiff reached Cincinnati without further event, but because of her tendency to develop Raynaud's syndrome and the exposure to cold in Cleveland the condition of her hands required that she be hospitalized. There was a discoloration of the right ring finger showing an area of impending gangrene to the tip; there was demarcation of the area of the left ring finger which was formerly occupied by a vesicle, and the tip of the finger was gray in color and cool to touch; she complained of pain, numbness, discoloration, and coldness of her fingers; and it was diagnosed as an obliterative arterial disease, or, in other words, the arteries of her upper extremities were structurally involved, causing a lack of proper circulation to the fingers.

Other facts could have been found by the judge. A woman 58 years of age can get the Raynaud syndrome at any temperature below body temperature and after exposure to cold of only a few minutes. Such attacks are brought on by changes of temperature, but also by absolute cold if below the temperature to which a person is accustomed. If a person is used to 72 degrees, and there is a sudden drop to 60 degrees, that could bring on an attack. Even a drop of one degree, from 70 to 69, if maintained for more than five minutes could have brought about the plaintiff's condition. A lay person looking at the plaintiff on January 15 could not have told that she had the disease.

Findings as to the plaintiff's experience at Cleveland could have been based upon statements she had made before suit was brought. She woke up about 9 A.M. because she was cold. She rang for the porter but no one came. She was alone in the car, which was standing in the yard and not at a platform. The station was inaccessible. She went to the washroom and got dressed. She "had to bundle up with her coat and furs," and put on a pair of woolen gloves. She rang twice more. Still no one came. She thought that the temperature was below freezing. She was

extremely cold. She went back into her berth. The car remained in the same condition until connected with the Cincinnati train after 12 M. At that time the temperature outside was 10 to 15 degrees, and the car had been "without any heat whatsoever" for about three hours with that temperature outside.

The judge ruled, in accordance with a request of the defendant, that the rights and liabilities of the parties are to be determined by the law of Ohio. This ruling is of no present importance, however, as we have seen no case in Ohio indicating any pertinent variation from the law of this Commonwealth.

As part of its obligation to furnish suitable accommodations, it is the undoubted duty of a common carrier to provide the heat necessary for the health, comfort, and safety of passengers during the performance of the transportation contract. 10 Am. Jur., Carriers, § 1337. 48 Am. Jur., Sleeping Car Companies, § 13. 13 C. J. S., Carriers, § 744, page 1398. 33 A. L. R. 168. The judge without objection by the plaintiff granted the defendants' second request, "That the defendants were under a duty to exercise ordinary care for the comfort of its passengers." This ruling became the law of the trial. *Horton* v. *North Attleborough*, 302 Mass. 137. *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 599. Upon the assumption that that basic ruling is correct, we do not consider applying the "single uniform standard of care" principle set forth in *Holton* v. *Boston Elevated Railway*, 303 Mass. 242, 244, or relying upon the explanation of *Moreland* v. *Boston & Providence Railroad*, 141 Mass. 31, given in *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207, 217–219.

This assumption is not decisive, however, as we think that, on either theory, there was evidence of the defendant's negligence. The testimony, however lacking in plausibility, was not too vague to permit a finding that, while the thermometer outside read at 10 to 15 degrees, the car stood for nearly three hours "without any heat whatsoever," and

that the temperature within the car was below freezing.
This was enough to warrant a finding that a person of
ordinary good health might have been affected by the cold.
If the temperature was low enough to cause harm to such
a person, the plaintiff, although in a susceptible condition,
could recover for all the injury she sustained as a result.
*Spade* v. *Lynn & Boston Railroad*, 172 Mass. 488, 491.
*Webber* v. *Old Colony Street Railway*, 210 Mass. 432, 442.
*Larson* v. *Boston Elevated Railway*, 212 Mass. 262, 267.
*Dellapenna* v. *Irwin*, 291 Mass. 221, 223. *Bryant* v. *Emerson*, 291 Mass. 227, 228–229. See *Murphy's Case*, 328
Mass. 301.

The judge denied the defendants' fifth request, which
reads: "That the defendants cannot be liable to the plaintiff in this action unless they negligently permitted the car
in which the plaintiff's intestate was a passenger on January
15, 1948, to get so cold that the health of persons of ordinary and normal health would be endangered thereby."
In this there was error. Except possibly where a common
carrier has, or reasonably should have, particular knowledge of a passenger's delicate condition, it is under no
liability for failure to heat a car unless a person of ordinary
good health would suffer harm. *Roark* v. *Missouri Pacific
Railway*, 163 Mo. App. 705, 708. *Owen* v. *Rochester-Penfield Bus Co. Inc.* 278 App. Div. (N. Y.) 5. *Bulloch* v.
*Missouri, Kansas & Texas Railway*, 171 S. W. 808 (Tex.
Civ. App.). *Zoccolillo* v. *Oregon Short Line Railroad*, 53
Utah, 39, 49–52. *Marcott* v. *Minneapolis, St. Paul &
Sault Ste. Marie Railway*, 147 Wis. 216, 219. See *Atlantic
Coast Line Railroad* v. *Powell*, 127 Ga. 805. As was said
in *Spade* v. *Lynn & Boston Railroad*, 172 Mass. 488, 491,
"Ordinary street cars must be run with reference to ordinary susceptibilities, and the liability of their proprietors
cannot be increased simply by a passenger's notifying the
conductor that he has unstable nerves."

We omit unnecessary discussion of the defendants' other
requests, and turn to questions of evidence that may arise
again. The porter in the car next to that in which the

plaintiff was a passenger was not permitted to testify as to temperature conditions in his car while at Cleveland. A woman passenger in a drawing room in a car on the same train, who may or may not have been shown to be in the same car with the plaintiff, was not allowed to testify that she experienced no discomfort from the cold while at Cleveland. These rulings might be upheld on the ground that substantial identity of circumstances was not shown. See *Emerson* v. *Lowell Gas Light Co.* 3 Allen, 410, 417; *Robitaille* v. *Netoco Community Theatre of North Attleboro, Inc.* 305 Mass. 265; *Southern Railway* v. *Harrington*, 166 Ala. 630, 639–640.

The porter in the plaintiff's car was rightly allowed to testify as to the temperature conditions in that car. *Leopold* v. *Van Kirk*, 29 Wis. 548, 553–554. He was giving at first hand his experience with the same conditions which confronted the plaintiff. *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 94, and cases cited. Wigmore, Evidence (3d ed.) §§ 442, 457, 1977. But he was not permitted to give evidence that eleven other passengers in that car made no complaint to him as to the temperature while at Cleveland. This is a somewhat different proposition, as it was sought to draw from the silence of those passengers a deduction that the car was not too cold, otherwise they would have spoken. In certain courts evidence of absence of complaints by customers has been excluded on the issue of defective quality of goods sold, and the hearsay rule has been relied upon or referred to. *United States* v. *11¼ Dozen Packages of Article Labeled in Part Mrs. Moffat's Shoo Fly Powders for Drunkenness*, 40 Fed. Sup. 208, 211 (D. C. W. D. N. Y.). *United States* v. *Paddock*, 68 Fed. Sup. 407, 409 (D. C. W. D. Mo. W. D.). *Altkrug* v. *William Whitman Co. Inc.* 185 App. Div. (N. Y.) 744, 748–749. *James K. Thomson Co. Inc.* v. *International Compositions Co. Inc.* 191 App. Div. (N. Y.) 553, 556–557. *George W. Saunders Live Stock Commission Co.* v. *Kincaid*, 168 S. W. 977, 978 (Tex. Civ. App.). Contra: *St. Louis Southwestern Railway* v. *Arkansas & Texas Grain Co.* 42 Tex. Civ. App. 125, 132. McCormick, The Border-

land of Hearsay, 39 Yale L. J. 489.  See *Danish Pride Milk Products Co.* v. *Marcus,* 272 Pa. 340, 344–345.  In *Menard* v. *Cashman,* 94 N. H. 428, 433–434, which was an action of tort arising out of a fall on a defective stairway in a business block, it was held proper to exclude testimony of a tenant that none of her customers had ever complained of any defects, the court saying that the testimony had the characteristics of hearsay, and that if it was not hearsay, it was only evidence of inconclusive silence, which might be excluded in the discretion of the trial judge.

Evidence as to absence of complaints from customers other than the plaintiff has been admitted in four cases, all relating to breach of warranty in the sale of food, in this Commonwealth.  In three of them the testimony was apparently received without objection.  *Gracey* v. *Waldorf System, Inc.* 251 Mass. 76, 78.  *Monahan* v. *Economy Grocery Stores Corp.* 282 Mass. 548, 550.  *Schuler* v. *Union News Co.* 295 Mass. 350, 352.  In *Landfield* v. *Albiani Lunch Co.* 268 Mass. 528, the plaintiff alleged that he had been made ill by eating beans purchased at the defendant's restaurant.  Subject to his exception, evidence was admitted that on that day and on the day preceding no complaint as to the beans was made by any other customer.  In upholding the ruling on evidence, it was said, at page 530: "The fact that others than the plaintiff ate of the food complained of without ill effects is competent evidence that it was not unwholesome. . . . There is a reasonable inference based on common experience that one who ate and suffered as he believed in consequence would make complaint.  There is a further reasonable inference, based on logic, that if no one complained no one suffered.  Obviously, the latter conclusion is not convincing that the food was wholesome, unless one is satisfied that both plaintiff and others ate of it.  Evidence of no complaint is too remote and should not be admitted unless, in addition to the fact that no complaints were made, there is evidence of circumstances indicating that others similarly situated ate and had opportunity for complaining."

It has often been said that where collateral issues may be

opened, much must rest in the discretion of the trial judge. *Bemis* v. *Temple*, 162 Mass. 342, 344. *Guidara & Terenzio Inc.* v. *R. Guastavino Co.* 286 Mass. 502. *Commonwealth* v. *Cohan*, 307 Mass. 179, 183. In the case at bar, should the circumstances of the plaintiff and of the other passengers as to exposure to the cold be shown to be substantially the same, the negative evidence that none of the others spoke of it to the porter might properly be admitted. The evidence would not be equivocal, and would then be offered on the basis of a common condition which all in the car encountered. The porter's duties should be shown to include the receipt of that sort of complaints from those passengers. It should appear that he was present and available to be spoken to, and that it was not likely that complaints were made by these passengers to other employees of the railroad or the sleeping car company. This would not seem to be a situation where one might prefer to remain silent rather than to make any statement. Indeed, if the car was too cold, ordinary prudence might seem to require that one speak out. There would be no ambiguity of inference. There would be at least as strong a case for admissibility as in the food cases, and a far stronger one than those relating to the sale of allegedly defective goods in which little may be known of the terms of sale to the noncomplaining buyers. Unlike the unknown users of a stairway in a business block, the uniform result of silence in the cases of a large number of passengers, here apparently eleven, would not be inconclusive. See Falknor, Silence as Hearsay, 89 U. of Pa. L. Rev. 192.

*Exceptions sustained.*