JESSIE O'LEARY, administratrix, *vs.* METROPOLITAN TRANSIT AUTHORITY.

Suffolk.   April 7, 1959. — June 3, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Street railway: ill passenger, stalled subway car.   *Carrier,* Of passengers.

In an action against a street railway to recover for the death of the plaintiff's intestate, who suffered a cerebral embolism and lapsed into unconsciousness one evening while in a subway train stalled in a mile long tunnel because of a power failure, and died the next morning without having regained consciousness, the evidence did not warrant a finding of negligence toward her on the part of the guard on the train, who, upon being notified of her illness, observed the aid rendered her by other passengers and "after a few minutes" left the train, walked forward, and reported her illness by telephone, although there was a telephone closer by to the rear, or a finding of negligence toward her on the part of other employees of the defendant during an interval of about one half hour between the time of such report and the time when, upon restoration of power, the train resumed its trip and arrived at the end of the tunnel, where she was almost immediately picked up by a police ambulance and taken to a relief station, or a finding that she was adversely affected after her cerebral attack by the fact that she was in a car which was crowded, hot, muggy, and filled with tobacco smoke. [332–333]

In an action against a street railway for the death of the plaintiff's intestate, a woman who had had a serious heart condition for some time and who suffered a cerebral embolism and became unconscious while riding in the defendant's subway train one evening and died the next morning without having recovered consciousness, the plaintiff was not entitled to recover on the ground that negligence of the defendant brought about a power failure which stalled the train in a tunnel for about an hour before the cerebral attack at a time when the car wherein the decedent was riding was crowded, hot, muggy, and filled with tobacco smoke, where the evidence, even if it warranted a finding that the delay under the conditions in the car was the cause of the cerebral attack, did not warrant a finding that such delay was harmful to persons of normal health riding in the car. [333–334]

TORT. Writ in the Superior Court dated January 8, 1951. The action was tried before *Collins*, J.

*Timothy J. McInerney*, (*Daniel J. Boyle* with him,) for the plaintiff.

*Claude R. Branch*, (*Jerome E. Andrews, Jr.*, with him,) for the defendant.

WHITTEMORE, J. The plaintiff brought an action to recover for the death of her intestate (hereinafter called the passenger). These are the plaintiff's exceptions to the action of the judge under leave reserved in setting aside a verdict for the plaintiff under the two counts which remained in the case, counts 1 and 3, and the defendant's exceptions to rulings on the admission of evidence.

On the evidence the jury could have found these facts: The passenger was in a train which, due to system wide power failure, came to a stop in the East Boston tunnel between 5:34 and 5:45 P.M. on September 20, 1950. The train remained in place about one eighth of a mile out of Atlantic Station and seven eighths of a mile from Maverick Station until sometime between 7:15 and 7:30 P.M. It was an unusually warm day for September; the car was crowded; the air became hot, humid and muggy, one out of every three persons was smoking. The guard tried to open the windows in the car but could open only two. At some time between 6:40 and 6:45 P.M. the passenger slumped forward and lapsed into unconsciousness. Fellow passengers reported the fact to the guard, administered smelling salts, stretched the passenger on a seat, fanned her, and rubbed her wrists and face. The passenger's appearance, convulsive movements and heavy breathing showed serious illness. Passengers smoked subsequent to the attack; the smoke was thick. The guard upon being notified came to the car and observed what had been done and did nothing himself until, "[a]fter a few minutes," he walked forward to the pump room "which was located toward the middle of the tunnel where a telephone was located." There was a telephone closer by in the Atlantic Avenue station, but the guard, as he testified, did not know that it was closer. His

report of the accident records that he told the motorman that he was going to the "nearest phone." He had travelled the route for five years. The guard telephoned the train starter at Maverick Station between 6:50 and 7 P.M. and reported that the passenger had fainted and looked desperately ill. The train starter told the guard to stand by for instructions which he did until between 7:15 and 7:30 P.M. when he climbed aboard the train as it passed after restoration of power. The train starter, after receipt of the guard's message, learned from a platform starter, who had walked the tunnel after the power failure checking on the stalled trains, that the train was quite a way down the tunnel, "outside Atlantic Avenue" or "Atlantic east," and reported the accident by telephone between 7:06 and 7:11 P.M. to the dispatcher at Sullivan Square. He then instructed the platform starter to get a stretcher and start down the tunnel to see if the passenger could be taken off the train. The stretcher group of three were about one hundred yards in the tunnel when power was restored. The train reached Maverick Station between 7:25 and 7:30 P.M. Guards removed the passenger on a stretcher and carried her upstairs where she was picked up by a police ambulance. She arrived at the East Boston Relief Station about 7:40 P.M. The call for the ambulance had been received by the police at about 7:30 or 7:35 P.M. and the passenger was lying on a stretcher on the sidewalk when the ambulance arrived, approximately three to five minutes later.

At the relief station the passenger's condition was diagnosed as cerebral vascular accident. She died at Boston City Hospital the next morning at 9:30 A.M. without having regained consciousness.

On testimony of a physician, a qualified heart specialist called by the plaintiff, and corroborating records, the passenger had had for some time a serious heart condition, a damaged and much enlarged heart with a leaking valve and auricular fibrillation, that is, a fluttering or shuddering of the two upper chambers instead of a normal beating. Her attack in the car was caused by a cerebral embolism, that is,

movement of a blood clot broken from a larger clot in the fibrillating heart to the brain and its blocking of a cerebral vessel, all happening in the time of the snap of a finger. The events and conditions in the car were a "proximate cause" of that heart attack.[1] The delay of one hour lessened her chance of getting better. "[T]he first important thing would be to get her to a place where she could be adequately treated," by the giving of oxygen, pumping out of mucous from breathing passages, and the giving of a sedative. Such prompt treatment would have substantially increased her chance of recovery, although it could not be said that she would not have died at the time she did regardless of treatment. Oxygen was available at nearby hospitals and, in portable form, in fire stations.

Rules of the defendant provide that "[i]n case of an accident, however slight . . . or . . . sudden illness . . . an employee shall at once render all necessary assistance . . .," that "[i]n case of serious personal injury . . . the employee will summons police or hospital ambulance," and that "[s]moking on the trains will be permitted only in smoking cars."

We assume that the evidence in respect of the plant and works was such that it could have been found that the breakdown was due to negligence. In our view of the case we need not appraise that evidence.

1. The allegation of negligence in count 1 was that the defendant's agents and servants completely ignored the stricken passenger, negligently did nothing to aid or assist her, and negligently and carelessly allowed her to remain on the train. We assume that the defendant upon notice of the passenger's condition was bound to exercise not only the high degree of care required to be exercised in respect of passengers generally, but such care as was reasonably necessary to protect the passenger from injury in view of her condition. See *Silver* v. *New York Cent. R.R.* 329 Mass. 14, 18. But the plaintiff, we think, for reasons to be stated, has failed in

---

[1] The defendant's exception to this testimony was not argued.

the burden of showing any negligence, after the passenger's attack, that caused or contributed to the passenger's death. The defendant's negligence in causing the attack and the consequent delay is not relevant to count 1. See point 2, *infra.*

We think the jury could not reasonably have found that the guard was negligent. He observed what others had done to relieve the passenger's distress; there is no suggestion in the evidence that he could helpfully have done else or more. He left to telephone within a "few minutes." It was not unreasonable to wait a short time for a sign of change in the passenger, and to determine a course of action. We do not agree that it was negligent for the guard to walk forward in the tunnel. It was reasonable to go in the direction of his train's destination, there being a telephone within a few minutes' walk. He had a responsibility to the passenger and the other passengers to return to the car as soon as possible, and the train might resume its progress at any moment.

There is no basis for concluding from the times given that the defendant's employees were dilatory at any stage after the guard left the train. We assume that the jury could have found that the applicable high degree of care required that the employees at Maverick Station alert the employees at Atlantic Avenue, but it is conjectural whether this action, or any alternative action which they or the guard might have undertaken, could have caused the removal of the passenger at a significantly earlier time. We do not know whether a stretcher could have been gotten to the train from Atlantic Avenue Station and back in something short of the time which elapsed before the resumption of power. The absence of evidence of the number and location of trains on both tracks and the possible rate of progress of the guard in each direction and of stretcher bearers in a partially blocked tunnel leaves us without the basis of a reasonable inference for the plaintiff. It is also speculative whether the stretcher trip would not have made worse the passenger's condition. There is also no basis for concluding that oxygen from a fire station could have been brought to the car in time to be helpfully administered there.

It does not appear that the conditions in the car after the attack, as distinguished from the absence of treatment for an hour, adversely affected the passenger. It does not appear whether the car was a smoking car. The defendant urges that it is purely conjectural whether the delay was the cause of death. We do not reach the issue and intend no suggestion.

2. Count 3 contained a general averment of death as the result of the negligence of the defendant. Specifications were filed to this count and they averred negligence in not keeping the plant in proper working condition; "compelling said intestate to remain in a crowded subway car for a long period of time"; and neglect and failure to assist the passenger after she was stricken; also negligence in letting the secondary source of power be out of repair.

The defendant's liability for defective works and crowded conditions extends only to the probable consequences to persons of ordinary and normal health. *Silver* v. *New York Cent. R.R.* 329 Mass. 14, 18; "[e]xcept possibly where [it, as] a common carrier, has, or reasonably should have, particular knowledge of a passenger's delicate condition" *ibid.*, p. 18. See *Spade* v. *Lynn & Boston R.R.* 168 Mass. 285, 289; *Jacquot* v. *Wm. Filene's Sons Co.* 337 Mass. 312, 315–316; *Quigley* v. *Wilson Line of Mass. Inc.* 338 Mass. 125, 128. In the *Silver* case, *supra*, p. 18, we held that it was error to deny a request for a ruling that the defendants cannot be liable "to the plaintiff in this action unless they negligently permitted the car in which the plaintiff's intestate was a passenger on January 15, 1948, to get so cold that the health of persons of ordinary and normal health would be endangered thereby." The plaintiff failed to sustain the burden of proving that the delay, or the conditions in the subway car, were such as to harm normal persons. There is no evidence on the point, other than the conditions in the car. We do not think an inference was warranted. There is no basis for concluding that the system breakdown and the hour's delay, in a crowded, close and smoke filled car, would have been harmful to a normal person, seated therein. For this reason under our settled rule, the plaintiff could not

recover even if, as we assume, but do not decide, there was sufficient evidence of causation. Contrast *Silver* v. *New York Cent. R.R.*, *supra*, 17–18 (railroad car without heat for three hours; outside temperature at 10 to 15 degrees).

3. The plaintiff excepted to the ruling of the judge that "in regard to matters on the train the plaintiff's pleadings only declared on negligence on the part of the defendant for the period following the attack . . . ." The plaintiff points to the specification to count 3 that "the defendant was negligent . . . [in respect of its works, so that the passenger was compelled] to remain in a crowded subway car for a long period of time . . . ." We assume that this specification permitted the plaintiff to show the crowded conditions with the concomitant smoke, humidity and mugginess. But the defendant, as stated, was liable only for the foreseeable consequences to a normal person. If the ruling was error it was inconsequential for the judgment should have been entered under leave reserved in any case.

4. It is unnecessary to consider the defendant's exceptions.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions dismissed.*