KATHERINE HASTINGS *vs.* PETER FLAHERTY.

Worcester. April 9, 1947. — June 3, 1947.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Negligence,* Gross, Motor vehicle.

A finding of gross negligence in the operation of an automobile at night
was warranted by evidence of the operator's looking in the mirror
to watch the headlights of a following vehicle "all the time all the
way," of his complying only temporarily with requests of occupants
of the automobile that he slacken speed, and of a very high rate of
speed on an unlighted country road containing numerous curves,
culminating in the automobile's failing to take a long curve to the
left and leaving the road.

TORT. Writ in the Second District Court of Eastern
Worcester dated February 21, 1941.

Upon removal to the Superior Court, the action was tried
before *Goldberg,* J.

*S. B. Milton,* for the defendant.

*M. C. Jaquith,* (*A. J. Kittredge* with him,) for the plaintiff.

WILKINS, J. The plaintiff was hurt while riding as an
invited guest in an automobile operated by the defendant.
The jury returned a verdict for the plaintiff. The defend-
ant's one exception, which was to the denial of his motion
for a directed verdict in his favor, presents the issue whether
the accident was caused by his gross negligence.

We summarize the evidence most favorable to the plain-
tiff: The plaintiff was injured after 11:45 P.M. on Christmas
eve, 1940, on a public way in that part of West Boylston
known as Oakdale, while on the way to attend a midnight
mass at a church in Oakdale. She was seated on the
front seat, and a Miss O'Toole (who later married the de-
fendant) was seated between the plaintiff and the defend-
ant. There were no other passengers. It was a clear, dry
night. The automobile, followed by another automobile
containing friends and driven by one Foley, had proceeded
from the plaintiff's house in Clinton to Lancaster, and had

returned through Clinton to West Boylston. The accident occurred in a district which was not thickly settled on an unlighted country road leading northerly to Oakdale at a point about one mile and one half beyond an intersection with another public way known as route 12. The road, of smooth macadam, was eighteen feet wide with one and one half foot dirt shoulders. The automobile failed to follow a curve to the left about one hundred twenty-five to one hundred fifty feet in length, sideswiped a telegraph pole on the right of the road about three and one half feet outside the macadam surface, and came to a stop about twenty feet beyond against an iron fence on the right of the road at the beginning of a bridge over a reservoir. The automobile "pushed the fence in," and was itself much damaged. When it struck the pole, the front wheels were off the road. When it came to rest, it was at right angles to the bridge with the front wheels "hanging over the bridge on the right." There were "lots of other curves on the road" before reaching the disastrous curve. The defendant's speed was fifty to sixty miles an hour. For at least a mile before the accident the automobile "was swaying from side to side of the road," was "weaving in the road," without any diminution in speed. At various times in the journey the plaintiff or Miss O'Toole cautioned the defendant to slow down, and on each occasion he complied, but "he would eventually start and go faster again." The first time was at a turn in Clinton. One occasion was about five miles from the scene of the accident before crossing the "bouncing bridge." Another instance was about a mile before reaching the scene of the accident, when both the plaintiff and Miss O'Toole told him to slow down. The last time, according to testimony of the plaintiff, was when "Peter was driving about I would say fifty to sixty miles an hour, and I told him to slow down, for God's sake, we would be killed. Then it seemed we took a turn and a greater burst of speed, and then I felt a scraping noise, and then a bump, and then we hit the bridge." The defendant's practice in taking a curve was to take his foot "off the gas," and he did so on this occasion. The automobile did

not "seem to go to the left at all; . . . it just kept on going as it was." When he "felt" the automobile "refusing to turn to the left . . . he started kicking the brake and trying to turn the wheel." The brakes were in good condition. The defendant "all the time all the way up" had been trying to watch the headlights on the Foley automobile in the mirror.

Where, as here, there is ample evidence of the defendant's negligence, it often is largely a matter of opinion whether the evidence discloses gross negligence. *Quinlivan v. Taylor*, 298 Mass. 138, 140. This is apt to be true of any question involving a difference of degree. And the distinction between ordinary negligence and gross negligence is one of degree. *Altman v. Aronson*, 231 Mass. 588, 591–592. *Cook v. Cole*, 273 Mass. 557, 561. Before reaching the road on which the accident occurred, the defendant on several occasions had been cautioned as to speed, and, although he invariably complied, he had as invariably resumed a faster rate. For more than a mile before striking the pole, the defendant had been driving in the dark at an uninterrupted rate of speed of nearly a mile a minute over an unlighted road containing numerous curves, and "all the time all the way" he had been looking in the mirror trying to watch the headlights of the automobile which was following. We think that the jury could have found that there was, on the part of the defendant, that deliberate inattention to the operation of the automobile which is one of the common indicia of gross negligence. See *Lynch v. Springfield Safe Deposit & Trust Co.* 294 Mass. 170, 172. We also are of opinion that the jury could have found that this unbroken inattention was the reason for the complete failure to observe the long curve to the left in season to enable him to make the turn. *Kirby v. Keating*, 271 Mass. 390. *Meeney v. Doyle*, 276 Mass. 218. *Green v. Hoffarth*, 277 Mass. 508, 516. *Dow v. Lipsitz*, 283 Mass. 132. *Crowley v. Fisher*, 284 Mass. 205. *Copeland v. Russell*, 290 Mass. 542. *Cycz v. Dugal*, 295 Mass. 417. *Koufman v. Feinberg*, 298 Mass. 270. *Picarello v. Rodakis*, 299 Mass. 33. *Granger v. Lovely*, 302 Mass. 504. *Connell v. Harrington*, 312 Mass. 436. In this

respect *Richards* v. *Donohue,* 285 Mass. 19, *Souza* v. *Mello,* 304 Mass. 552, *Driscoll* v. *Pagano,* 313 Mass. 464, *Adams* v. *Doucet,* 316 Mass. 1, and other cases upon which the defendant relies, are distinguishable.

We need not determine whether there were present any of the other common indicia of gross negligence.  But see *Channon* v. *Lynch,* 292 Mass. 316;  *Dean* v. *Bolduc,* 296 Mass. 15, *Goodwin* v. *Walton,* 298 Mass. 451;  *Dombrowski* v. *Gedman,* 299 Mass. 87.

*Exceptions overruled.*