Eva Mazukna & another *vs.* Archie J. Powers.

Worcester.   September 26, 1955. — December 7, 1955.

Present: Qua, C.J., Ronan, Spalding, Williams, & Counihan, JJ.

*Negligence,* Motor vehicle. *Evidence,* Opinion: expert. *Witness,* Expert.

Evidence of the circumstances in which a motor truck with a heavy load driven in a single line of vehicles on the down grade of a long tunnel under traffic conditions in which the slowing and stopping of vehicles was to be expected struck the rear of the automobile preceding it after the automobile had stopped warranted a finding of negligence on the part of the operator of the truck.   [333]

At the trial of an action for personal injuries sustained by the plaintiff when an automobile in which she was riding was struck in the rear while at a stop by the defendant's truck, there was no error in permitting a doctor who had treated the plaintiff for brain hemorrhage resulting from hypertension and high blood pressure prior to the accident to state, on the basis of the assumed facts that the plaintiff was thrown forward and struck her head in the accident, his expert opinion that symptoms he observed after the accident indicated that the shaking of her head in the accident aggravated her earlier condition and that she suffered concussion of the brain with aggravated hypertension and damage to the brain tissues, where evidence of such assumed facts was subsequently introduced.   [334–335]

It may be assumed from the admission of expert opinion testimony that the trial judge found the witness to be qualified as an expert.   [335]

Tort.   Writ in the Superior Court dated February 14, 1949.

The action was tried before *Meagher,* J.

*Sumner W. Elton,* for the defendant.

*Thomas S. Carey,* for the plaintiffs, submitted a brief.

Williams, J.   This is an action of tort wherein the plaintiff Eva Mazukna seeks to recover for personal injuries and the plaintiff Albert Mazukna for damage to his automobile caused by a collision with a truck of the defendant in the Sumner tunnel, Boston, on May 18, 1948.   The action was

tried with two other actions arising from the same accident; one by the same plaintiffs originally against one Helen Jeffries and later by amendment after her death against Emory Goodwin, the executor of her estate, and the other originally by Helen Jeffries and later by amendment by Emory Goodwin, executor as aforesaid, against Jack Nissenbaum.

There was evidence that in the early afternoon of May 18, 1948, four automobiles were proceeding in a continuous single line of traffic toward East Boston on the down grade of the Sumner tunnel near the Boston end. The first of these automobiles was a sedan owned by Albert Mazukna and driven by his brother Bruno. Their mother, Eva Mazukna, was riding beside the driver on the front seat. Next behind the sedan was a five ton truck owned by the defendant and operated by his employee Ring, carrying a load weighing somewhat less than one and one half tons. Behind the truck was an automobile driven by Helen Jeffries and behind her a taxicab driven by Jack Nissenbaum. Bruno Mazukna testified that, seeing the traffic ahead of him slowing up, he gave a hand signal that he was going to stop and stopped about ten feet from the automobile in front of him. He saw in his rear mirror the truck between thirty and forty feet behind him and after about five seconds heard a crash as the truck struck his automobile. He did not actually see the collision. At some time the Jeffries automobile ran into the truck and the taxicab ran into the Jeffries automobile. There was conflicting testimony as to the sequence of these events. Ring, the operator of the truck, testified that he stopped his truck short of the Mazukna automobile and while stopped was struck by the Jeffries automobile and pushed into the Mazukna automobile. Goodwin testified that the decedent Helen Jeffries told him that the truck hit the automobile in front of it; that she stopped; and that the taxicab pushed her into the truck. Nissenbaum testified that his taxicab did not hit the Jeffries automobile. One Myers, who was driving an automobile behind the taxicab, testified that he heard a

crash which did not involve either the "other" automobile (meaning apparently that of Jeffries) or the taxicab; and that he heard another crash and saw the taxicab "bounce" off the Jeffries automobile which then went under the tailboard of the truck. All of these automobiles apparently were travelling at approximately the same speed, the estimates of the witnesses varying from fifteen to twenty-five miles per hour. The jury returned verdicts for the defendants in the cases against Jeffries and Nissenbaum and for the plaintiffs in the instant case against the owner of the truck. The exceptions of the defendant relate to rulings on evidence admitted in the course of the trial and to the denial of his motion for a directed verdict.

It does not appear that the plaintiff Albert Mazukna was present at the time of the collision and no question is raised as to the due care of the plaintiff Eva. The correctness of the denial of the defendant's motion depends on whether a jury could find negligence on the part of the defendant's operator. There was plainly evidence that his truck struck the Mazukna automobile before in turn the truck was struck by the Jeffries automobile. "Evidence of a rear end collision without evidence of the circumstances . . . is not proof of the negligence of the operator of either vehicle . . . but slight evidence of the circumstances 'may place the fault.' " *Buda* v. *Foley*, 302 Mass. 411, 412–413. The operator of the truck was driving in a single line of automobiles on a down grade with a heavy load. It could be found that the conditions in the tunnel were such that the slowing down and stopping of traffic were to be expected, and that reasonable care on his part required that his speed, maintenance of distance from the automobile ahead, and observance of its movements be governed by such probability. There was evidence that when the Mazukna automobile stopped the truck was thirty or forty feet behind. Whether the failure to stop without colliding with the automobile ahead was due to the operator's negligence was for the jury to determine. *Warren* v. *Howe*, 332 Mass. 213.

Before she had testified, Eva called as a witness Dr.

Raymond W. Gadbois, who testified that he graduated from Boston University Medical School in 1933, interned at St. Vincent Hospital, Worcester, was a member of the American College of Surgeons, and was resident in surgery at St. Vincent and at Pondville Hospital, Wrentham. He treated Eva in 1941 and 1942 for subarachnoid hemorrhage, a hemorrhage beneath one of the layers of the brain, resulting from hypertension and high blood pressure. He saw her later on May 19, 1948, when she told him that she had been "pushed forward" in an automobile accident. Her chief complaint was pain in the right side of her head, nervousness, and headaches. She consulted him again on May 25, June 1, June 11, and October 14. On November 2, 1949, "she came in with a new complaint, 'pain in the left chest with shortness of breath.' " He recommended an electrocardiogram but she "did not have this done." The next and last time he saw her was November 21, 1951. Her blood pressure was then "alarmingly high."

The witness was asked, "What is your opinion, assuming that this woman is a passenger in an automobile which is stopped and is hit from the rear by another car; that forces the woman forward so that she struck her head against the forward part of the car where she was seated, and that after that had complaints that you have already told the jury about; you examined her and found these conditions that you have already described." On objection by the defendant, the judge advised the jury that as they had heard no facts as to what happened to the plaintiff, they should, before accepting the doctor's opinion, reserve their judgment until the facts assumed in the question were, in their opinion, proved. The witness then was allowed to answer and the defendant excepted. The answer was in substance that dizziness and headaches following the existing elevated blood pressure and damaged blood vessels of the brain indicated that the shaking of the head aggravated the earlier symptoms. The doctor testified that his diagnosis was concussion of the brain with aggravated hypertension and damage to the brain tissues.

He testified that he had no opinion whether the symptoms of November, 1951, were due to the accident but that those preceding that date were definitely related. Asked, subject to the defendant's exception, how the accident brought on an aggravated hypertension, he said, "Commotion in the brain with spasm of the blood vessels of the brain increasing the resistance at the further end of the arterial tree." We observe no error in permitting the doctor to testify as above. Later in the trial there was testimony by Bruno and Eva that she was thrown forward and struck her head; that she was unconscious for a short time; and that following the accident she had headaches and dizziness. The doctor's knowledge of her previous physical condition was adequate as a basis for the opinion which he expressed. See *Kerr* v. *Palmieri*, 325 Mass. 554, 559. The defendant's present contention that the witness had not shown requisite qualifications to testify as an expert on the matters in question cannot be sustained. No specific objection was made during the trial on this ground. By allowing the doctor to state his opinion it is to be assumed that the judge found him properly qualified. His decision was one of fact and it cannot be said that there was no evidence to warrant his conclusion. *Arena* v. *John P. Squire Co.* 321 Mass. 423, 425.

*Exceptions overruled.*