MAY BELLE JACQUOT & another vs. WM. FILENE'S SONS
COMPANY.

Suffolk. February 5, 1958. — April 9, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

Sale, Warranty, Of artificial fingernail kit, Parties. Evidence, Evidence
binding a party; Presumptions and burden of proof; Test; Opinion:
expert. Damages, Consequential. Husband and Wife, Purchase of
personal property.

A statement made by a salesgirl in a store to a customer that an article
sold was "wonderful" was merely seller's talk and not a warranty.
[315]
An express warranty made by a salesgirl in a store to a customer that
use of an artificial fingernail kit of liquids and a powder sold to the
customer would "enhance" the customer's hands, when taken with
instructions enclosed in the kit warning against continued use of the
product by persons with allergies, could not properly be found to
amount to more than the implied warranty under G. L. (Ter. Ed.)
c. 106, § 17 (1), that the product was reasonably fit for use as an
artificial fingernail kit. [315]
In order to recover for breach of a warranty in a sale of an artificial finger-
nail kit that it was reasonably fit for use as such, the buyer would have
to prove, among other things, that the kit was unfit to be used by a
normal person. [315]
In an action for breach of warranty of fitness in a sale of an artificial
fingernail kit to one whose fingers were injured through use of the
materials in the kit, the plaintiff failed to sustain the burden of prov-
ing that the kit was unfit to be used by a normal person and could not
recover where her own testimony and that of her dermatologist showed
that her skin was not normal, there was no evidence of any analysis
of the chemical content of the materials, and the only other admissible
evidence on the point was testimony by the dermatologist that in
several years of practice her case was the first he had seen of one having
skin trouble from use of such a kit and evidence of sales of several
hundred of the kits by the defendant without any other claim of
injury. [316–317]
A plaintiff whose fingers were injured through use of the materials in
an artificial fingernail kit purchased by her and who testified that
she had previously had skin trouble "following the use of perfume,
nail polish and mascara" was bound by such testimony in the absence
of any evidence more favorable to her showing that her skin was normal,

and a finding that it was normal was not warranted; on the record she was not aided by any presumption of normality. [316]

In an action for breach of warranty of fitness in a sale of an artificial fingernail kit to one whose fingers were injured through use of the materials in the kit, evidence as to patch tests with such materials made by the plaintiff's husband and a friend should have been excluded in the absence of medical evidence to show that the tests were made in accordance with recognized medical standards or to interpret the tests. [317–318]

Answers by an expert witness to hypothetical questions based on an assumed fact of which there was no admissible evidence at the trial should have been excluded. [318]

In an action of contract for breach of warranty against a seller of an article to a wife who purchased it in her own behalf and not as her husband's agent and was injured through its use, the husband could not recover consequential damages resulting from her injuries. [318]

CONTRACT. Writ in the Municipal Court of the City of Boston dated September 1, 1955.

The action was heard by *Shamon, J.*

*Nathan Fink,* (*Richard D. Gilman* with him,) for the plaintiffs.

*James D. Casey,* for the defendant.

CUTTER, J. This is an action of contract, brought in the Municipal Court of the City of Boston, to recover for injuries to Mrs. Jacquot caused by an artificial fingernail kit purchased from the defendant. Her husband asks consequential damages. The trial judge found for both plaintiffs and denied the defendant's requests for rulings that the evidence did not warrant findings for either plaintiff. Upon report to the Appellate Division, the findings were vacated and findings for the defendant were ordered. The plaintiffs appealed. The facts, in their aspect most favorable to the plaintiffs, appearing upon the report are stated below.

Mrs. Jacquot, a cosmetics demonstrator of long experience, was employed by Hazel Bishop Company and assigned to work in the defendant's store. In April, 1955, she bought from the defendant a fingernail kit made by another company. The kit consisted of five vials containing liquids and a powder. Mrs. Jacquot read the enclosed instructions and followed them in applying the material from April to July, 1955. Compare *Taylor* v. *Jacobson,* 336 Mass. 709,

712, 714–715. These instructions "included . . . a warning against the continued use of the product for persons with allergies." Over objection and a request for a report, Mrs. Jacquot testified that the defendant's salesgirl told her "how wonderful the product was" and that "it would enhance my hands." The trial judge found that the purchase was made "upon the express warranty . . . that the ingredients . . . would grow . . . shapely nails." Mrs. Jacquot made known the purpose for which she was buying the kit and relied upon these express warranties, and any applicable implied warranties.

In July, 1955, Mrs. Jacquot's fingernails became cracked and inflamed, with the nails turning brown. She had never used the product before. On adequate medical testimony, summarized below, the trial judge found that use of the product caused the injuries.

Upon discovery of the injuries, Mrs. Jacquot went to a medical clinic on the defendant's premises and was treated by a physician. She reported the injury to him on July 19, 1955, and to the floor manager of the defendant's cosmetics department on August 1, 1955. We consider the case on the assumption that the trial judge correctly found that Mrs. Jacquot gave to the defendant sufficient notice of the alleged breach of warranty. See G. L. (Ter. Ed.) c. 106, § 38.

Mrs. Jacquot was also treated by a qualified dermatologist. The history given by her to him showed "that she had previously had . . . transitory skin eruptions following the use of perfume and mascara." Mrs. Jacquot herself so testified. He gave as his opinion (a) "that the condition of the tips of her fingers and fingernails was caused by the artificial fingernails" and that "in reference to . . . [her] skin . . . [she] became abnormal to the reaction"; (b) that "the average normal person does not have . . . [such] eruptions"; and (c) "that the plaintiff was allergic to the liquid in the kit . . . [and] had a peculiar sensitivity to this particular product." In his ten to eleven years of practice as a dermatologist this "unusual case" was "the first . . . he had ever seen of a person having a dermatitis

resulting from the use of the" kit. This doctor, with the contents of the kit, conducted patch tests on Mrs. Jacquot but not on other persons. "No analysis, chemical or otherwise, was made of the ingredients . . . in the kit." The defendant in 1955 sold over five hundred kits and "this case was the only claim of notice . . . of any injury . . . as a result of the use of . . . [the] kit."

Prior to purchase of the kit, Mrs. Jacquot had reported to the defendant's clinic for treatment of an "inflamed eye following the use of mascara." Trouble with her eyes was ended when she stopped using mascara. She reported to the doctor at that time that she was allergic to fingernail polish.

1. The salesgirl's statement that the product was "wonderful" was only seller's talk and has no legal significance. *Ireland* v. *Louis K. Liggett Co.* 243 Mass. 243, 248. The express warranty that the use of the product would "enhance" Mrs. Jacquot's hands, when taken with the instructions against its continued use by persons with allergies, would not support a finding that the express warranty meant more, or had a wider scope, than the statutory implied warranty, under G. L. (Ter. Ed.) c. 106, § 17 (1),[1] that the product was reasonably fit for use as an artificial fingernail kit.

2. For a plaintiff to recover for breach of an implied warranty of fitness of a garment, a cosmetic, or comparable product, sold for use on or near the person, the plaintiff must show (assuming, for purposes of discussion, that the implied warranty, reliance thereon, and notice of its alleged breach have been shown): (1) that personal injuries were suffered because of use or wearing of the article; and (2) that the article was unfit to be worn or used by a normal person. *Bradt* v. *Hollaway*, 242 Mass. 446, 449. *Payne* v. *R. H. White Co.* 314 Mass. 63, 65. *Longo* v. *Touraine Stores, Inc.*

---

[1] Statute 1957, c. 765, § 1, inserted a new G. L. c. 106, containing the Uniform Commercial Code. Sections 2–313 to 2–317, inclusive, contain provisions with respect to express and implied warranties. By § 21 of the 1957 statute, the new code becomes effective October 1, 1958. Section 2–607 of the code contains certain provisions with respect to notice of breach of warranty (compare present c. 106, § 38).

319 Mass. 727, 728. See, however, *Flynn* v. *Bedell Co. of Massachusetts*, 242 Mass. 450, 453–454. This proof would be necessary not only with respect to the implied warranty, but with respect to a comparable express warranty. See *Graham* v. *Jordan Marsh Co.* 319 Mass. 690, 692, 693.

By the dermatologist's testimony, Mrs. Jacquot established a causal relationship between the product and her injury. Even if this causal relationship could also have been inferred from the fact that the injuries followed upon her first use of the product, she has not sustained the burden of proof resting upon her that the product was unfit to be used by a normal person or that it had some "intrinsically unhealthy quality . . . that would affect a normal person." See the *Longo* case, *supra*, at page 728. There was no evidence whatsoever of analysis of the chemical content of the kit. In the absence of direct testimony about the sensitivity of her skin, there might be a presumption, or permissible inference, that she was normal. See *Payne* v. *R. H. White Co.* 314 Mass. 63, 65. She is bound, however, by her own testimony that "following the use of perfume, nail polish and mascara, she had temporary blotches on her skin," there being no testimony as to her skin more favorable to her. See *Muir Brothers Co.* v. *Sawyer Construction Co.* 328 Mass. 413, 415.

Any presumption that the plaintiff's skin was normal, if there is such a presumption under the *Payne* case, *supra*, at page 65, disappeared once her own and the medical testimony, warranting a finding that her skin was not normal, was introduced. See *Allen* v. *Mazurowski*, 317 Mass. 218, 220–221; *Epstein* v. *Boston Housing Authority*, 317 Mass. 297, 301–303. Any inference that her skin was normal ceased to be permissible where (a) her own testimony was to the contrary and (b) there was no affirmative testimony that she was normal. The trial judge was not warranted by the evidence in the record in finding or inferring, as he did, "that the plaintiff's skin and fingernails were not sensitive and that she never had trouble with them before."

The case is unlike *Carter* v. *Yardley & Co. Ltd.* 319 Mass.

92, 94 (where it did not appear that there was any evidence whatsoever about the sensitivity of the plaintiff's skin), *Graham* v. *Jordan Marsh Co.* 319 Mass. 690, 693 (where, the plaintiff having testified that there was nothing wrong with her skin before using the product there in question and that she had previously used a similar product, it was held that the jury might disregard her expert's testimony that she was unusually susceptible and infer that she was normal from her own testimony), and *Kurriss* v. *Conrad & Co. Inc.* 312 Mass. 670, 674 (where it "could have been found that the plaintiff had never before had any skin ailments").

The plaintiff has not shown that she is one of a class of persons sensitive to the fingernail kit to whom the implied warranty of fitness might extend under the principle stated in *Bianchi* v. *Denholm & McKay Co.* 302 Mass. 469, 473. See Note, 25 Fordham L. Rev. 306, 310–313; Note, 26 A. L. R. (2d) 963, 966–972. See also Prosser, Torts (2d ed.) 503. Compare Harper and James, Torts, § 28.22. The only admissible evidence on this point was (a) that of the dermatologist who in ten to eleven years of practice had not seen another case of such sensitivity and (b) the evidence that, in over five hundred sales of kits by the defendant, this was the only one on which there had been notice of claim. See *Silver* v. *New York Central Railroad*, 329 Mass. 14, 20–21.

3. The trial judge admitted, over the defendant's objection and claim of report, testimony of Mrs. Jacquot's husband and of one of her friends that they had each made patch tests by placing small amounts of the contents of the several vials in the kit, on his or her thigh, then covering each such patch with a band-aid. After about a day in one case and forty-eight hours in the other case, certain of the patch areas showed signs of redness and inflammation. There was no medical evidence offered (a) to show that these patch tests "were done in accordance with recognized medical standards" or (b) to interpret the tests. A motion to strike the testimony was denied subject to the defendant's claim of a report.

The Appellate Division properly held that these tests per-

mitted "no rational deductions which could be helpful in determining the . . . issue" here presented because the tests were not made under the supervision of a qualified expert and because "application of the material . . . to the bare skin on the thigh is hardly a place to test the suitability of a product sold as a nail restorer." The evidence as presented had no probative value without medical backing and interpretation and should have been excluded. See *LeBlanc's Case*, 334 Mass. 265, 267; *Jones* v. *Spering*, 334 Mass. 458, 461. This was not an instance where a layman's general knowledge and experience could be an adequate substitute for expert interpretation. Compare *Lovely's Case*, 336 Mass 512, 515–516.

Because this testimony should have been excluded, there was no admissible evidence whatsoever of any generally injurious quality in the ingredients of the kit. The trial judge should have excluded answers to hypothetical questions in cross-examination of a medical witness, admitted over the defendant's objection and subject to a claim of report, based on the assumption that such an "injurious" quality had been shown. See *Flynn* v. *Growers Outlet, Inc.* 307 Mass. 373, 376; *Brown* v. *United States Fidelity & Guaranty Co.* 336 Mass. 609, 613–614. Compare *Mazukna* v. *Powers*, 333 Mass. 331, 334.

4. The defendant's requests for rulings that the evidence did not warrant findings for either plaintiff should have been granted. As has been shown, there was no admissible evidence that the kits were not reasonably fit for use by a normal person. In addition, in this action of contract, if the purchase was made by Mrs. Jacquot for her own account and not as agent for her husband, he had no cause of action. See *Kennedy* v. *Brockelman Brothers, Inc.* 334 Mass. 225, 227.[2]

*Order of Appellate Division affirmed.*

---

[2] Compare provisions of Uniform Commercial Code (see footnote 1, *supra*) § 2–318 which, effective October 1, 1958, extends the benefit of warranties, express or implied, "to any natural person . . . in the family or household of" the buyer under some circumstances.