*Southern District*

No. 7410

**SYLVIA S. PEKUNECE, et al.**

v.

**JORDAN MARSH COMPANY**

Argued: Jan. 28, 1971 - Decided: May 24, 1971

*Present:* Parker, P.J., Cowdrey, Durkin, Flaschner, JJ.

Case tried to *Lee, J.* in the First District Court of Southern Middlesex No. 984/R.

(This opinion has been abridged).

**Parker, P.J.** This is an action of tort or contract which was remanded from the Superior Court under G.L. c. 231, § 102C. The plaintiff's declaration is in four Counts. By the first count she seeks to recover for personal injuries because of a breach of an implied warranty of fitness in the sale of product known as "Revlon Cake Eyeliner and Brush". The second count is based on the defendant's nesgligence in selling an impure eyeliner to the plaintiff. Counts three and four were for expenses incurred by Paul Pekunece as consequential damages. The defendant's answer in its relevant portions is a general denial, contributory negligence, assumption of risk and lack of notice of the breach of warranty.

The court found for the plaintiff for breach

of implied warranty in the amount of $800.00 on count one and $7.50 on count three. On counts two and four, it found for the defendant.

**There was evidence that** the female plaintiff purchased a package of "Revlon Cake Eyeliner and Brush" from the defendant early in January 1967, the product having been recommended by the defendant's sales girl. She used the product for the first time on 22 January 1967, having first read all the directions and having applied the eyeliner in accordance with the instructions. She applied it to both eyelids. The next morning her eyelids were itchy and later became swollen and red. The condition subsided four weeks later, following treatment by a doctor. She had used lipstick, finger nail polish as well as an eyebrow pencil, but had not used "Revlon Eyeliner and Brush" previous to this occasion. Previously she had no allergies and had never been treated by any physician for any allergy.

A doctor, who treated Mrs. Pekunece, testified that he first saw her on 18 February 1967 because of redness, swelling and itching of the eyelids of two or three days duration. She related the irritation to the "Revlon Eyeliner." The doctor's diagnosis was periorbital skin irritation consistent with contact dermatitis, likely to result from the application of a cosmetic to both eyes.

The medical director of the manufacturer of the "Eyeliner", who was a Diplomat of the

American Academy of Dermatology, testified that the "Eyeliner" had been tested by patch tests on the backs and wrist of about 4,000 persons for a period of over one year prior to its introduction into the consumer market with negative reactions and that these tests had been supervised by him.

The General Sales Manager of the manufacturer of "Revlon Eyeliner and Brush" gave testimony that he received all notices of complaints from all over the country and the only complaint he knew of was that of the plaintiff and that since the product had been introduced into the market in August of 1962, 1,933,192 packages of "Revlon Cake Eyeliner and Brush" had been sold by Revlon. The court found by the granting of the defendant's request #6 that plaintiff was the only person complaining of injury alleged to have been caused by the "Revlon Eyeliner."

There was also testimony that the cause of the plaintiff's contact dermatitis could have been anything that touched her skin to which she was peculiarly sensitive or allergic and not the result of the "Revlon Eyeliner" and that anything in our environment can cause contact dermatitis.

There was evidence that this product was packaged in a small container with a screw on plastic top and not otherwise sealed. The plaintiff testified that it was "sealed".

The defendant seasonably presented eleven Requests for Rulings.

The court denied Requests #2, 4, 7, 8, 9, 10 and 11 which read as follows:

*2.* The evidence does not warrant a finding for the plaintiffs.

*4.* The evidence requires a finding that the "Revlon" did not contain a significant irritant.

*7.* If the court finds that "Revlon Eyeliner" did not contain a significant irritant and that no significant numbers of persons were injured by said product, a finding for the defendant is required.

*8.* In the absence of medical evidence that the cause of the plaintiff's injury was an irritant in the "Revlon Eyeliner," a finding for the defendant is required.

*9.* As a matter of law the defendant did not breach any warranties of merchantability running to the plaintiff.

*10.* As a matter of law the defendant did not breach any warranties of fitness for the particular purpose running to the plaintiff.

*11.* Taking the evidence in the light most favorable to the plaintiff, a finding for the defendant is required.

The court made the following findings of fact: "I find that the plaintiff is entitled to recovery against the defendant upon the theory of implied warranty of fitness and merchantability. I find that the product sold by the defendant to the plaintiff, known as "Revlon

Cake Eyeliner and Brush'' caused personal injury to her face and eyelids and was not fit for this particular purpose nor was it of merchantable quality''.

The defendant claims to be aggrieved by the denial of the above requests. Neither the report, nor brief, nor argument, nor requests of the defendant raise the question of notice to the defendant and this point is deemed waived.

In this case the defendant, a retailer, gave an implied warranty of the merchantability of a product known as ''Revlon Cake Eyeliner and Brush'', which was not of its own manufacture, the warranty being that the product was reasonably suitable for the ordinary uses for which it was sold when used in accordance with adequate warnings and instructions. G.L. c. 106, § 2-314 (2) (C). *Taylor* v. *Jacobson,* 336 Mass. 709, 716.

For the plaintiff to recover for a breach of warranty in this cause it must be shown that she is a normal person. *Payne* v. *R. H. White Co.,* 314 Mass. 63. *Longo* v. *Touraine Stores, Inc.,* 319 Mass. 727, 728.

However, there is a presumption that the plaintiff, in a breach of warranty case brought for injury caused by the use of a product purchased of a defendant is a normal person. *Casagrande* v. *F. W. Woolworth Co.,* 340 Mass. 552. To overcome this presumption the defendant has a burden to produce evidence

that the plaintiff is not a normal person. *Casagrande* v. *F. W. Woolworth Co., Inc., supra.*

The above testimony of the manufacturer's medical director and sales manager has met the presumption of normality of the plaintiff. *Jacquot* v. *Wm. Filene's Sons Co.,* 337 Mass. 312, 316.

 This being so, the plaintiff has the usual burden of proof and to sustain it must produce evidence which, with reasonable inferences, warrants the conclusion that the product was unfit, in that it would have sensitized a significant number of persons. *Jacquot* v. *Wm. Filene's Sons Co.,* supra. *Bianchi* v. *Denholm & McKay Co.,* 302 Mass. 469.

This case is distinguishable from *Graham* v. *Jordan Marsh Co.,* 310 Mass. 690 because in the case at bar the defendant has introduced additional evidence to show that the plaintiff was not a normal person. This evidence tended to show she was the only case of a person out of over a million and a half packages of the product sold during the period since its introduction to the consumer market in 1962 till the date of the accident 21 January 1967. The introduction of this evidence by the defendant has met the presumption of normality and that the burden rested upon the plaintiff to probe the breach of warranty on the part of the defendant. *Casagrande* v. *F. W. Woolworth Co., Inc.,* 340 Mass. 552.

The question then before us, is whether, on

the evidence most favorable to the plaintiff, has she sustained the burden of proof that she was a normal person? That question is raised by the court's denial of the defendant's request for ruling #11 reading as follows:

"11. Taking the evidence in the light most favorable to the plaintiff, a finding for the defendant is required."

The evidence most favorable to the plaintiff as shown in the report is that the plaintiff after reading the directions given with the product used it following these directions, for the first time on 21 January 1967. On the following morning her eyelids were itchy and later became swollen and red and that these conditions subsided some four weeks after the accident and after treatment by Dr. Brown. She had used lipstick, finger nail polish and Eye-Brow Pencil before the accident. She also testified that she had no allergies and had never been treated by any physician for any allergies. Dr. Brown testified that he treated the plaintiff on 18 February 1967, because of redness, swelling and itching of the eyelids of two or three days duration, and that the patient related the irritation to the "Revlon Eyeliner." Dr. Brown diagnosed her condition as periorbital skin irritation consistent with contact dermatitis, likely to result from the application of a cosmetic to both eyes. A dermatologist testifying for the defendant stated that anything in our environment, even "Revlon Eyeliner" can cause contact dermati-

tis. Disregarding all the evidence for the defendant and assuming this evidence to be the facts of the case would the plaintiff be entitled to recover, bearing in mind that the presumption of her normality has been rebutted and the burden is on the plaintiff to show she is a normal person?

On this evidence and the general knowledge of allergies of which we take notice and which is reflected in all the testimony of the case at bar makes it unreasonable to infer from any part or parts of the evidence that a significant number or even any other person would have been hurt by the product.

"An inference of fact that the product would have hurt 'normal' persons may not be drawn from the evidence of an alleged allergic reaction in one person who has not previously shown sensitivity. *Longo* v. *Touraine Stores, Inc.,* 319 Mass. 727." *Casagrande* v. *F.W. Woolworth Co., Inc.,* 340 Mass. 552, 556.

The case at bar is distinguishable from *Graham* v. *Jordan Marsh Co.,* 319 Mass. 690 since in the case at bar the presumption of normality in the plaintiff was met by the defendant's evidence and so the plaintiff had the burden of proof to show she was normal and, on the evidence most favorable to her, she has failed to produce evidence that her reaction to the product was the reaction of a normal person, since on the evidence she is the only person shown to have reacted as she did. In *Graham* the de-

fendant did not meet the presumption of normality and so did not sustain the burden placed upon it by the presumption.

The trial court was in error in denying the defendant's request #11, and the finding of the court should be vacated and **a finding entered for the defendant.**

L. M. Fox
for the Plaintiff.

JOHN J. GILFOYLE
for the Defendant.