The MARANTZ COMPANY, INC., Plaintiff,

v.

CLARENDON INDUSTRIES, INC. and Borg Warner Acceptance Corporation, Defendants.

AKAI AMERICAN, LTD., Plaintiff,

v.

CLARENDON INDUSTRIES, INC. and Borg Warner Acceptance Corporation, Defendants.

Civ. A. Nos. 85–4663–C, 85–4796–C.

United States District Court, D. Massachusetts.

Sept. 28, 1987.

R. Todd Cronan, Ropes & Gray, Boston, Mass., for plaintiff.

Charles R. Bennett, Jr., Riemer and Braunstein, Boston, Mass., for defendants Clarendon & Borg Warner.

## MEMORANDUM

CAFFREY, Senior District Judge.

These actions present various claims for damages arising from the performance of certain agency agreements between the plaintiffs and defendant, Clarendon Industries, Inc. ("Clarendon"). Jurisdiction is based on the diversity of the parties. 28 U.S.C. § 1332. These matters are now before the Court on a motion for summary judgment filed by Marantz Company, Inc. ("Marantz") and on defendant Clarendon's cross-motions for partial summary judgment against both plaintiffs. In addition, Akai America, Ltd. ("Akai") has requested the court to reconsider its decision denying Akai's previous motion for summary judgment.

On November 30, 1984, Clarendon was authorized by the United States Bankruptcy Court to act as inventory agent on behalf of Marantz and Akai, suppliers of Tech HiFi, Inc. Tech HiFi was a retailer of audio components and related products and at the time of the Bankruptcy Court's order, was the subject of a Chapter 11 reor-

ganization.[1] Pursuant to the Court's order, Clarendon replaced the plaintiffs' former inventory agent, Collateral Management, Inc. ("CMI"). The parties agree that the original agreements executed between the plaintiffs CMI and Tech HiFi govern the relationship between Clarendon and the plaintiffs. These contracts, collectively referred to by the parties as the CMI Agreements, consist of an Agency Agreement whereby Clarendon became the agent of both Marantz and Akai and a Security Agreement executed between Tech HiFi, the plaintiffs and Clarendon as substitute for CMI.

The CMI Agreements contemplated that Clarendon would act on behalf of Marantz and Akai in supervising and monitoring HiFi's receipt, handling and disposition at retail of products sold to Tech HiFi on a secured credit basis. Under the agreements, Marantz and Akai would ship their products to Tech HiFi's warehouse facilities where the products would be handled and stored by Tech HiFi subject to Clarendon's direction. The agreements prohibited Tech HiFi from moving, transferring or selling the inventory except in conformity with procedures established by Clarendon. Clarendon was to prescribe the form for daily reports related to the inventory and the sales of Tech HiFi and was to supervise the Tech HiFi employees responsible for preparing these reports. The agreements also required Clarendon to make periodic inventory checks and to monitor the inventory accounts on a regular basis.[2]

The Amended Complaints present a variety of claims grounded on an alleged shortfall in inventory discovered by the plaintiffs following repossession of their respective products from Tech HiFi. Both Marantz and Akai have alleged claims for breach of contract, breach of bailment, negligence, gross negligence, violations of the Uniform Commercial Code, breach of trust, unfair and deceptive acts and unjust enrich-

ment. Additionally, Akai asserts a claim for damages arising from the breach of certain express warranties allegedly made by Clarendon.

Clarendon has moved for summary judgment against both plaintiffs on all counts except the claims for gross negligence, unfair and deceptive acts and unjust enrichment. In support of its motions, Clarendon relies on a provision in the CMI agreements which states:

> The Agent shall not be liable with respect to any action taken or omitted to be taken by it in good faith under this Agency Agreement and shall not be liable with respect to an action taken or omitted to be taken unless it shall be proved that the agent was guilty of gross negligence or wilful misconduct.

Both Marantz and Akai assert that this clause is unenforceable. The plaintiffs offer two grounds for this assertion. The first is based on federal case law which finds exculpatory provisions in bailment contracts to be unenforceable as a matter of public policy. The second is based on the Uniform Commercial Code provisions which limit the ability of a warehouseman to disclaim liability for his negligence.

Because this is a diversity case, Massachusetts law is controlling.[3] Under Massachusetts law, a party may exempt himself by contract from liability resulting from his own or his employees' negligence. *Henry v. Mansfield Beauty Academy, Inc.* 353 Mass. 507, 510–511, 233 N.E.2d 22, 24 (1968); *Barrett v. Conragan*, 302 Mass. 33, 34, 18 N.E.2d 369, 370 (1938); *Clarke v. Ames*, 267 Mass. 44, 46, 165 N.E. 696, 697 (1929). Such exculpatory clauses are valid provided they were not obtained through fraud or overreaching. *See, e.g., Lee v. Allied Sports Associates, Inc.* 349 Mass. 544, 551, 209 N.E.2d 329, 333 (1965); *Dill v. Boston Safe Deposit and Trust Co.*, 343 Mass. 97, 99–100, 175 N.E.2d 911, 912–913 (1961). Neither Marantz nor Akai have

---

**1.** The Chapter 11 proceeding was subsequently converted to a Chapter 7 liquidation.

**2.** Clarendon asserts that these duties were modified by the subsequent course of dealing between the parties.

**3.** The parties have not suggested that another state's law would be more appropriate.

alleged that the exculpatory provision was obtained through improper means. By its terms, it applies only to good faith acts or omissions not rising to the level of gross negligence or wilful misconduct. The clause is therefore no different from others which have been held effective under Massachusetts law. *See Dill v. Boston Safe & Trust Co.*, 343 Mass. at 100, 175 N.E.2d at 913.

Although exculpatory provisions are generally valid in Massachusetts, the legislature has circumscribed their use in the context of the business of warehousing. Under Mass.Gen.L.Ch. 106, § 7–202(3), a warehouseman may not impair the obligation of due care owed to the persons with whom he deals. *See also Fireman's Fund American Insurance Co. v. Captain Fowler's Marina, Inc.*, 343 F.Supp. 347, 350 (D.C.Mass.1971). If, as plaintiffs assert, Clarendon is a "warehouseman" within the meaning of Mass.Gen.L.Ch. 106, § 7–102(h), the exculpatory provision will be ineffective to relieve the corporation from liability for negligence.

■ The Uniform Commercial Code defines a "warehouseman" as a person "engaged in the business of storing goods for hire". Mass.Gen.L.Ch. 106 § 7–102(h). As evidenced by the brochure attached to plaintiffs' Amended Complaints, the business of Clarendon is to provide an inventory control service whereby Clarendon conducts physical inspections of inventory sold by its clients to various dealers and distributors. As described in the brochure, these inspections are conducted at "the dealer's store and/or warehouse." Nothing in the brochure indicates that Clarendon itself offered to store the inventory of its clients. To the contrary, Clarendon's services were to be performed at the storage facilities of the dealers with whom Clarendon's clients dealt.

The CMI agreements confirm that Clarendon, with respect to its relationship with the plaintiffs, was not engaged in the business of storing the inventory sold to Tech HiFi. Under the Security Agreements, both Marantz and Akai agreed to sell their products to Tech HiFi on a secured credit basis. Section 3.2 of the Security Agreement states that the products would then be shipped to the warehouse facilities of Tech HiFi where they would await sale at retail. While the agreements limited Tech HiFi's freedom concerning the inventory by dictating that the products were to be "logged in, marked or tagged and otherwise stored" as Clarendon might direct, Tech HiFi had the primary responsibility of storing the inventory it purchased from Marantz and Akai on its own premises. Whatever supervision Clarendon agreed to provide over the storage of the products is insufficient to convert Clarendon's business from inventory control to that of warehouseman as that term is defined under the Uniform Commercial Code. Accordingly, the statutory limitation on a warehouseman's ability to disclaim liability for negligence does not apply to the exculpatory provisions contained in the CMI agreements. Since the provision is also effective at common law, Clarendon is entitled to summary judgment against both Marantz and Akai on the counts claiming ordinary negligence and violations of the Uniform Commercial Code.

■ Clarendon also asserts that the exculpatory clause entitles it to summary judgment on the breach of contract claims asserted by Marantz and Akai. To the extent that these claims are based on allegations that Clarendon failed to use reasonable care in performing its contractual duties or in assuring their performance, the Court agrees that the exculpatory clause exempts Clarendon from liability for breach of contract. Section 5 of the Agency Agreement states that Clarendon is exempt from liability for "any action taken by it or omitted to be taken by it in good faith under this Agency Agreement or the Security Agreement". The clause clearly refers to the contractual duties of Clarendon and exempts Clarendon from liability for negligence in their performance or nonperformance. Such a provision is not inconsistent with Massachusetts law as set forth above.

While a negligent breach is within the clause, an intentional breach of contract

would seem to be excluded from its protection either because an intentional breach constitutes wilful misconduct or because the good faith requirement of the provision is not met.[4] To prove that the breach was intentional, plaintiffs have produced undisputed evidence that Clarendon desired to execute a new agreement which would replace the CMI agreements as the instruments governing the relationship of the parties. The evidence further shows that both Marantz and Akai refused to agree to this new contract. Based solely on this evidence, the plaintiffs would have the Court infer that Clarendon intentionally breached the CMI agreements. As a matter of law, however, the mere fact that Clarendon desired to negotiate a new agreement and was rebuffed does not provide a sufficient basis for finding that Clarendon wilfully breached its existing contract. Since no other evidence indicates that any breach on Clarendon's part was wilful or in bad faith, the claims for breach of contract are within the protection of the exculpatory clause. The defendant is therefore entitled to summary judgment on these claims.

■ Clarendon next requests summary judgment on the breach of bailment claims. The defendant offers two grounds to support its motion. First, because Clarendon never had actual possession of the inventory sold to Tech HiFi, Clarendon was not a bailee for hire and therefore owed no duties as bailee for the plaintiffs. In the alternative, even if Clarendon was a bailee, summary judgment is appropriate because the exculpatory clause contained in the CMI agreements exempts Clarendon from any liability resulting from breach of bailment.

Whether or not the relationship between the plaintiffs and Clarendon can be charac-

terized as a bailment need not be decided on these motions. A bailee is required to exercise reasonable care under the circumstances. *Wright v. Heil Equipment Company*, 357 Mass. 74, 75, 256 N.E.2d 318, 319 (1970). Under Massachusetts law, the liability arising from breach of this duty may be limited by contract. *See Kennedy v. B.A. Gardetto, Inc.*, 306 Mass. 212, 216, 27 N.E.2d 957, 959 (1940); *D'Aloisio v. Morton's, Inc.*, 342 Mass. 231, 235, 172 N.E.2d 819, 822 (1961); *Kergald v. Armstrong Transfer Express Co.*, 330 Mass. 254, 256, 113 N.E.2d 53, 54 (1953). Although the exculpatory provisions in the CMI agreements exclude liability completely rather than merely limiting it, the provisions of a contract agreed to between capable parties should be enforced unless the provisions are in contravention of an overriding public policy. *See Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 379, 185 N.E. 383, 388 (1933). The policy of Massachusetts is to allow the parties, if they so choose, to exclude liability for damages arising from negligence. In the circumstances of the present case, the public interest is not adversely affected by enforcing this contract according to its terms. The defendant is therefore entitled to summary judgment on the claim for breach of bailment.

■ The next issue is whether the exculpatory clause relieves Clarendon from liability for the alleged breaches of fiduciary duties owed Marantz and Akai.[5] It is undisputed that Clarendon acted as agent for the plaintiffs in its dealings with Tech HiFi. As agent for the plaintiffs, Clarendon assumed fiduciary responsibilities as to all matters within the scope of that agency. *United States v. Drumm*, 329 F.2d 109, 112 (1st Cir.1964).

---

**4.** In opposing defendant's motion for summary judgment, plaintiffs have not raised the possibility that the alleged breaches of contract were wilful and therefore not within the protection of the exculpatory clause. However, in their cross-motions for summary judgment, Marantz and Akai have asserted that Clarendon deliberately chose to ignore its obligations under the CMI agreements. Thus, the Court will address the issue in order to dispose of defendant's motion.

**5.** Plaintiffs have characterized these claims as breaches of trust and defendant has contested whether a trust was created. In essence, the plaintiffs are asserting that Clarendon breached the fiduciary duties it owed to them as agent. Consequently, whether a "trust" was created is irrelevant.

Under Massachusetts law, a contract containing a clause which exculpates a fiduciary from liability for breach of fiduciary duties is valid unless the clause purports to include breaches committed intentionally, in bad faith, or with reckless indifference to the interests of the beneficiary of those duties. *New England Trust Co. v. Paine*, 317 Mass. 542, 550, 59 N.E.2d 263 (1945). The provision in the CMI agreements specifically excepts from its protection actions or omissions of Clarendon which are the result of gross negligence, wilful misconduct or bad faith. Consequently, the clause is similar to other exculpatory provisions deemed effective in a fiduciary context. *See Dill v. Boston Safe Deposit & Trust Co.*, 343 Mass. at 100–01, 175 N.E.2d at 913. Since any assertion that Clarendon intentionally breached its fiduciary duties to the plaintiffs is based on the same evidence which the Court has held insufficient to support a finding of intentional breach of contract, the defendant is also entitled to summary judgment on these claims.

■ The final issue to be resolved in order to dispose of Clarendon's motion for summary judgment is whether Clarendon expressly warranted the quality of its performance to Akai.[6] Akai bases its claim for breach of warranty on a sales brochure which was allegedly mailed to Akai by the defendant. The brochure stated, in relevant part, that "Clarendon brings a unique level of experience and professionalism to the field of inventory and control services", that "Clarendon has the expertise to perform regular inventory inspections and attempt collection of monies due upon completion of our inspection", that Clarendon employs a "consistent and knowledgeable work force" which "cannot be equaled by any competitor" and that "Clarendon operates a receivable control service with unmatched experience and professionalism." These statements, asserts Akai, constitute express warranties whose breach entitles Akai to recovery.

Although express warranties can be created by statements contained in a sales brochure, Massachusetts law recognizes that not every statement therein automatically becomes a warranty. *Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 822–23, 434 N.E.2d 611, 617 (1982). A distinction must be made between an affirmation of fact made by a seller which creates an express warranty and a statement of opinion which constitutes mere "seller's talk." *Id. See also Jacquot v. Wm. Filene's and Sons*, 337 Mass. 312, 315, 149 N.E.2d 635, 638 (1958); *Ireland v. Louis K. Liggett Co.*, 243 Mass. 243, 248, 137 N.E. 371, 373 (1922). While many of the decisions surrounding express warranties concern contracts for the sale of goods, the distinction between statements of opinion and statements of fact is equally useful in determining whether an express warranty has been created in the context of a contract for services.

Statements which constitute mere "puffing" rather than affirmations of fact generally relate to the value or quality of that which the seller is offering. These statements tend to be subjective and not easily verifiable. For example, in *Jacquot v. Wm Filene's and Sons*, 337 Mass. at 315, 149 N.E.2d at 638, a statement by the salesclerk that the product sold was "wonderful" was held to be seller's talk with no legal significance. Similarly, in *Ireland v. Louis K. Liggett Co.*, 243 Mass. at 248, 137 N.E. at 373, the court held as a matter of law that a statement by the seller that its product was "very good, very popular, you will like it ..." was insufficient to create an express warranty on the part of the seller. In both cases, the seller was merely stating his or her own opinion regarding the quality of the product.

Comparing the statements contained in the Clarendon brochure to statements held not to create an express warranty under Massachusetts law, the court finds that these statements do not create any express warranties running in favor of Akai. In

---

**6.** Marantz has not asserted a claim for breach of express warranties in its separate action against Clarendon.

**1074**

their essence, the statements in the brochure are merely a subjective opinion regarding the quality of Clarendon's services by the least objective party, Clarendon itself. Clarendon is therefore entitled to summary judgment against Akai on the claim alleging breach of express warranties.

The disposition of defendant's motion for summary judgment leaves little to discuss in terms of plaintiffs' cross-motions. Since defendant is entitled to summary judgment against both plaintiffs on the claims for breach of contract, negligence, breach of trust, UCC violations and breach of bailment, and to summary judgment against Akai on its claim for breach of express warranty, only plaintiffs' motions for summary judgment against Clarendon on the claims for gross negligence and unfair and deceptive acts remain for decision.

Plaintiffs assert that they are both entitled to summary judgment on their claims for gross negligence. The Court disagrees. Summary judgment is rarely appropriate in negligence cases. Negligence involves questions concerning the reasonableness of the parties' behavior and, as a result, is usually within the province of the jury. *Gracyalny v. Westinghouse Electric Corp.*, 723 F.2d 1311, 1316 (7th Cir.1983); *Cook v. Baker Equipment Engineering Co., Inc.*, 582 F.2d 862, 865 (4th Cir.1978). Summary judgment is particularly inappropriate in the present case where Clarendon's liability necessarily depends on a finding that Clarendon was grossly negligent rather than merely careless in performing its contractual duties. As the parties have recognized, the difference between gross negligence and ordinary negligence is one of degree. *Hastings v. Flaherty*, 321 Mass. 368, 370, 73 N.E.2d 601, 603 (1947). Even assuming that the plaintiffs' factual assertions are true, the Court is unwilling to decide as a matter or law that defendant's conduct was grossly negligent. Plaintiffs' motions are therefore denied as to the claims for gross negligence.

As discussed above with reference to defendant's motion for summary judg-

ment on the breach of contract and breach of trust claims, the evidence presented by plaintiffs is insufficient as a matter of law on which to base a finding that Clarendon wilfully breached the CMI agreements. Evidence that defendant breached its contract, without more, is not enough to prove a violation of Mass.Gen.L. Ch. 93A, § 11. *See Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 100–101, 390 N.E.2d 243, 251 (1979). In order to recover the treble damages which plaintiffs seek, the evidence must show that defendant wilfully and intentionally engaged in unfair and deceptive acts. Mass.Gen.L. Ch. 93A, §§ 2, 11. As a matter of law, plaintiffs have not proved they are entitled to summary judgment on this issue.

Order accordingly.

## ORDER

In accordance with the memorandum filed this date it is ORDERED:

1. Defendant's motion for summary judgment in Counts I, II, III, V, VI, VII and VIII of the Amended Complaint is granted.

2. Plaintiff's request for reconsideration of its motion for summary judgment is denied.