JOSEPH HANNON[1] vs. ORIGINAL GUNITE
AQUATECH POOLS, INC.

Middlesex.   December 10, 1981. — April 20, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Consumer Protection,* Unfair act or practice, Attorney's fees, Arbitration.
   *Arbitration,* Consumer Protection Act.

In an action brought pursuant to G. L. c. 93A, alleging unfair and decep-
   tive practices, this court, assuming, without deciding that entering in-
   to a contract for the construction of an in-ground swimming pool con-
   stituted a transaction in goods under the Uniform Commercial Code,
   found neither a breach of implied warranties nor a breach of an ex-
   press warranty violating Regulation VII B of the Attorney General's
   Rules and Regulations, 20 Code Mass. Regs., Part 5, at 28, and
   c. 93A, § 2. [820-824]
In the circumstances, an allegation that a contractor's use of an arbitra-
   tion clause in a construction contract requiring the plaintiff, but not
   the contractor, to submit to arbitration before instituting any legal ac-
   tion, was insufficient to state a claim of deceptive practice in violation
   of G. L. c. 93A. [824-825]
In an action charging a contractor with certain practices described as "low
   balling" and "commercial bribery" in violation of G. L. c. 93A, the
   judge did not err in concluding that the contractor's conduct with
   respect to such charges did not constitute unfair or deceptive practices
   proscribed by c. 93A. [825]
A consumer need not submit to arbitration as a precondition to asserting
   rights under G. L. c. 93A. [825-827]
In a proceeding pursuant to G. L. c. 93A, this court's holding that a con-
   tractor committed no c. 93A violation foreclosed an award of attor-
   ney's fees to the plaintiff under § 9(4) of c. 93A; in the circumstances,
   the award of attorney's fees and expenses to the contractor as the "pre-
   vailing party" under the terms of the contract was to be reduced by
   certain fees and expenses attributable to pretrial litigation involved in
   forcing the plaintiff into arbitration as a precondition to asserting his

---

[1] The plaintiff sought certification of a class of individuals allegedly in-
jured by conduct of the defendant.  His motion for class certification was
denied, and he does not appeal that denial.

rights under c. 93A, duplication of effort in preparing and presenting evidence at trial which had previously been introduced during the arbitration proceeding, and preparation and presentation of evidence introduced at trial on the issues raised by the plaintiff's attempt to obtain class certification.  [827-829]

CIVIL ACTION commenced in the Superior Court on October 17, 1975.

The case was heard by *Morse, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Robert R. White* for the plaintiff.

*Allan R. Rosenberg* for the defendant.

LYNCH, J.    The plaintiff, Joseph Hannon, contracted with the defendant, Original Gunite Aquatech Pools, Inc. (Aquatech), to build an in-ground, gunite swimming pool in the back yard of his residence in Tewksbury.  On October 17, 1975, before the pool was completed, Hannon filed a complaint in the Superior Court in Middlesex County, alleging several violations of G. L. c. 93A, including misrepresentations, "low-balling"[2] and "commercial bribery."[3] Aquatech denied Hannon's allegations and counterclaimed for a balance of $635 due on the contract, $917.25 in extra charges for excavation and, pursuant to a clause in the contract, reasonable attorney's fees and expenses.  Aquatech had also demanded, pursuant to a second contract clause, that Hannon submit his claims to arbitration.  Hannon responded by amending his complaint to allege that use of the

---

[2] The term "low-balling," according to Hannon, denotes a practice of submitting an unreasonably low estimate of costs for a project and securing a contract on the basis of that estimate, while intending to ensure a profit on the contract by charging the other party, as "extras," for expenses that were anticipated and should have been included in the contract price.

[3] The term "commercial bribery" (or "commercial extortion"), as used by Hannon, denotes a practice of "extorting" payment of the "extra" construction charges by refusing to continue performance under the contract until these charges are paid.

arbitration clause in the contract constituted a separate violation of G. L. c. 93A. Hannon also sought certification of a class of consumers allegedly injured by Aquatech's deceptive practices.

On Aquatech's motion and over Hannon's objections, a judge of the Superior Court ordered the parties to arbitration and stayed proceedings on Hannon's complaint. G. L. c. 251, § 2. After three days of hearings, the arbitrator made an award requiring Aquatech to remedy certain defects in the swimming pool and finding that Hannon owed Aquatech $635, the balance due on the contract, plus $848.25 in excavation "extras." A second judge of the Superior Court confirmed the award on Aquatech's motion. G. L. c. 251, § 11.

The case went to trial. Hannon insisted that he was entitled to a de novo determination of all issues raised by his G. L. c. 93A claims. Aquatech, on the other hand, asserted that the arbitrator's award foreclosed all issues except Aquatech's claim for attorney's fees and expenses under the contract.

The jury-waived trial lasted seven days. The trial judge entered judgment for Aquatech for $1,483.25 in damages (the amount found by the arbitrator) with interest and costs, plus the sum of $19,118 for attorney's fees and expenses.[4] The judge based his decision on alternative grounds: (1) that the arbitrator's award, as confirmed, foreclosed him from making any different judgment on Hannon's claims and Aquatech's counterclaims (except with respect to attorney's fees and expenses), and (2) that Aquatech committed no unfair or deceptive act or practice in violation of G. L. c. 93A. In support of his second ground of decision, the judge made specific findings of fact in the hope that retrial could be avoided if his first ground of decision

---

[4] Much of the parties' time at trial was devoted to the introduction of evidence relevant to Hannon's unsuccessful attempt to obtain class certification. Hannon's attorney sought $22,482.75 in fees and expenses. The judge found that these fees and expenses also were reasonable for the time and effort expended.

was held, on appeal, to be erroneous. The judge also denied Hannon's motion for class certification.

In this appeal, which we transferred from the Appeals Court on our own motion, Hannon argues in essence that the denial of his motion to stay reference and the order forcing him to proceed to arbitration was error. He also contends that the trial judge erred (1) in holding that Aquatech's inclusion of the arbitration clause in the contract was not a G. L. c. 93A violation, (2) in holding that Aquatech's conduct with respect to "low-balling" and "commercial bribery" did not constitute violations of that statute, and (3) in awarding attorney's fees to Aquatech, the defendant, in what Hannon insists is exclusively a G. L. c. 93A action.

We hold that consumers need not submit to arbitration as a precondition to asserting their rights under G. L. c. 93A. The trial judge's first ground of decision was erroneous. The judge did not err, however, in finding that Aquatech's conduct did not violate G. L. c. 93A in any respect. He properly ordered Hannon to pay Aquatech $1,483.25 in damages on its counterclaim. That portion of the judgment granting attorney's fees and expenses to Aquatech was erroneous in so far as the amount awarded encompassed fees and expenses (1) incurred in the course of forcing Hannon into arbitration, (2) attributable to the introduction of evidence at trial that had been introduced previously during the arbitration proceeding, and (3) attributable to trial of the issues involving Hannon's attempt to obtain class certification. We reverse that portion of the judgment granting attorney's fees and expenses to Aquatech and remand the case to the Superior Court for a determination of the proper amount of those fees and expenses and for the entry of an appropriate judgment.

1. *Background.* The evidence introduced at the arbitration hearings and at trial tended to prove the following. In the spring of 1975, Hannon entered into negotiations with one Thomas Heffernan, a vice president of Aquatech, regarding construction of a swimming pool and related facilities in the back yard of the Hannon residence in Tewksbury.

In the course of these negotiations, Heffernan furnished Hannon with an Aquatech sales brochure, on which Hannon relied. The brochure spoke in glowing terms of the professional quality of the design of Aquatech pools, the engineering that was part of the design, and the quality of the workmanship and materials.

The negotiations culminated in a contract, dated June 17, 1975, which was signed by Hannon and Heffernan. The reverse of the one-page contract document contained certain agreed conditions. Those relevant to this controversy are:

"3.   REPRESENTATIONS AND DUTIES OF BUYER.

"3.1 As a material representation upon which CONTRACTOR has been induced to make this proposal and to accept the same if it be in fact accepted by CONTRACTOR after signature by BUYER, BUYER represents:

3.1.1   That fill ground (soil not compacted to 90% nor having a bearing capacity of 1000 pounds per square foot), ground water, rock formation, boulders or expansive soil do not exist in, on or under the real property of BUYER.

". . . .

"4.   GENERAL.

"4.1 In the event that any action or proceeding shall be brought for the purpose of determining or enforcing the rights of either party hereunder, the party prevailing in such action or proceedings shall be entitled to recover from the other party all costs and expenses incurred by the prevailing party, including reasonable Attorney's fees. In the event CONTRACTOR shall be required to employ an Attorney to enforce collection of any payment required to be made by BUYER to CONTRACTOR, BUYER agrees to pay a reasonable amount as and

for Attorney's fees although legal action either was not instituted or not completed to judgement.

". . . .

"4.7 In the event of a dispute arrising [*sic*] between the customer & Original Gunite Aquatech Pools, Inc., the customer shall submit to arbitration by the Better Business Bureau of Mass. before any legal action can be brought against Original Gunite Aquatech Pools, Inc."

Before signing the contract, Hannon told Heffernan that there might be some buried tree stumps and construction debris in the proposed pool site. Hannon also told Heffernan that the ground water level was about eight and one-half feet below the surface. Heffernan informed Hannon, in substance, that there would be extra charges if there was a difficult excavation. Hannon's testimony is that Heffernan told him that these charges would not exceed $250. The trial judge found, however, that Heffernan said that if water was encountered, the "expected" extra charge would be $250.[5]

On June 20, 1975, Hannon executed an "excavation approval form," which provided in part: "The elevation and location of this pool is approved. . . . If problems are encountered during excavation such as ledge, peat, water, large boulders, etc., their removal will be at [owner's] expense. Any stone required during excavation will be at [owner's] expense. If water is encountered during excavation there will be a minimum $250.00 charge." These provisions, printed in block letters, were clearly readable.

Aquatech sent a tracked vehicle to excavate. The operator soon encountered water and buried stumps, and was unable to continue. A rubber-tired vehicle (a backhoe) completed the job, assisted by an Aquatech employee with a large pump. Continued flooding of the excavation necessitated pumping during later stages of construction as well.

---

[5] Heffernan died soon after the contract was executed; the trial judge and arbitrator both had to rely on the testimony of others with regard to what Heffernan actually told Hannon.

Aquatech billed Hannon $1,375.25 for excavation, in addition to the $7,000 contract price. It allowed Hannon a credit of $400, the amount of the contract price it allocated toward a "normal" excavation. The trial judge found that the balance of $917.25[6] was a fair and reasonable charge for work done and materials furnished by Aquatech and its subcontractors.

The construction of the pool proceeded in a manner and at a pace which was entirely unsatisfactory to Hannon. Work stopped on the pool on or about July 27, 1975, at least partly as a result of Hannon's failure to complete grading around the site, a task which Hannon had agreed to undertake. When Aquatech sent a bill for $917.25 for excavation extras, Hannon declined to pay it. The trial judge found that Aquatech was justified in stopping work when Hannon declined to pay the bill, or to make any adjustment or partial payment.

On August 27, 1975, Hannon (who had retained an attorney) sent a G. L. c. 93A demand letter to Aquatech alleging unfair and deceptive practices as to "the time of construction and the cost of said construction." He contended that Aquatech had engaged in "low-balling" and "commercial bribery," and explained those terms. Hannon demanded (1) a credit of $750 for work done on the pool by him, (2) deletion of all charges for extras, and (3) attorney's fees of $500. Aquatech responded by counsel on September 16, 1975, offering to negotiate or, in the alternative, to submit the dispute to arbitration. On October 11, 1975, Aquatech sent Hannon a letter offering to "complete the swimming pool within thirty days . . . pursuant to the terms of the contract" and making demand for arbitration pursuant to paragraph 4.7 of that contract. Hannon filed suit on October 17, 1975, alleging in his complaint the same violations of G. L. c. 93A as set forth in his August 27, 1975, demand

---

[6] The judge awarded Aquatech $848.25 for excavation extras, the amount found by the arbitrator. The $917.25 figure is apparently the result of an oversight.

letter. Hannon sent a second demand letter on November 17, 1975, alleging that use of the arbitration clause in the contract violated G. L. c. 93A and announcing his intention to seek certification of a class of parties injured by Aquatech's alleged unlawful practices; he subsequently amended his complaint to include the additional claim and later made a motion for class certification.

After prolonged skirmishing, a Superior Court judge ordered the parties to arbitration. At the time of arbitration, there were cracks and leaks in the interior plaster finish of the pool which the arbitrator found were Aquatech's responsibility to repair. Patches put on by Aquatech before the arbitration did not hold, and at the time of trial there were still cracks and stains in the plaster. Aquatech offered, on October 15, 1976, and again on January 5, 1977, to remedy the leaks and discoloration without charge, in accordance with the arbitrator's award. Hannon did not accept these offers. The case went to trial. The trial judge found that Hannon failed to prove that the discoloration was due to any act or omission of Aquatech. He also found that to repair the holes in the plaster surface and gunite shell of the pool would take no more than one-half day's work.

Since he found no G. L. c. 93A violations, the trial judge awarded Hannon neither damages nor attorney's fees. He awarded Aquatech the amount found by the arbitrator ($1,483.25) on its contractual counterclaim, with interest, plus attorney's fees and expenses of $19,118, pursuant to paragraph 4.1 of the contract.

2. *Breach of Uniform Commercial Code warranties as G. L. c. 93A violations.* General Laws c. 93A, § 2 (*a*), declares that all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. St. 1967, c. 813, § 1. Section 2 (*c*) of G. L. c. 93A, authorizes the Attorney General of the Commonwealth to promulgate rules and regulations to facilitate enforcement of § 2 (*a*). Pursuant to his statutory authority, the Attorney General promulgated Regulation VII B, 20 Code Mass. Regs., Part 5, at 28 (1975), which reads in part:

"It shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty. The utilization of a deceptive warranty is unlawful."[7]

Among the warranties encompassed by that regulation are those set forth in the Uniform Commercial Code (UCC), G. L. c. 106. See § A of the rules and regulations, 20 Code Mass. Regs., Part 5, at 20 (1975) (definition of "warranty" includes language tracking that of UCC warranties). Hannon asserts that Aquatech violated Regulation VII B, and hence committed a violation of G. L. c. 93A, by breaching the warranties set forth in G. L. c. 106, §§ 2-313 (express warranties), 2-314 (implied warranty of merchantability) and 2-315 (implied warranty of fitness for a particular purpose).

Assuming, without deciding, that entering into a contract for the construction of an in-ground, gunite swimming pool constitutes a transaction in goods[8] under the UCC (see G. L. c. 106, § 2-102), Hannon has no colorable claim that Aquatech's construction of his pool breached the UCC implied warranties. First, the implied warranty of fitness for a particular purpose has no bearing on this case. "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." UCC § 2-315 Comment 2. Nothing in the record suggests that Hannon intended to put his pool to uses other than those customarily made of swimming pools or that, if the appropriate repairs are made, Hannon's pool will be unfit for swimming.

---

[7] The regulations of the Attorney General were recodified after the date of the acts complained of here, and now may be found in 940 Code Mass. Regs.

[8] Compare *Riffe* v. *Black*, 548 S.W.2d 175 (Ky. App. 1977) (provisions of UCC apply to sale of in-ground, vinyl-lined pool), with *Gulash* v. *Stylarama, Inc.*, 33 Conn. Supp. 108 (C.P. 1975) (contra).

"Merchantability" is defined in G. L. c. 106, § 2-314, inserted by St. 1957, c. 765, § 1. Subsection 2 (*c*) of that section, the part of the definition most applicable to this case, states that, to be merchantable, the goods must be at least such as are "fit for the ordinary purposes for which such goods are used." "The implied warranty of merchantability, [however,] like that of fitness, is primarily directed at the operative essentials of a product. . . . It is not intended to guarantee high quality or perfection of detail." *Tracy* v. *Vinton Motors, Inc.*, 130 Vt. 512, 516 (1972). "There is no implied warranty that the goods shall be of the best or even a very high quality." H. Alperin & R. Chase, Consumer Rights and Remedies § 68, at 158 (1979). Since the trial judge found that the necessary repairs to the pool would take no more than one-half day (and since Aquatech's offers to repair have been outstanding since, at least, October 11, 1975), Aquatech has met its responsibility under the UCC, if any, to provide Hannon with a "merchantable" pool.

In any event, Hannon focused at trial on Aquatech's alleged express warranty that the pool would be of the highest quality.[9] The alleged warranty was included in an advertising brochure supplied to Hannon by Aquatech before the contract was signed. The brochure stated that "[b]efore the pool qualifies as a full-fledged 'Aquatech Pool', however, it must be designed and constructed to the highest quality specifications." The trial judge found that Hannon relied on Aquatech's brochure; he did not find that Hannon relied on the particular sentence quoted above.

We have no doubt that express warranties can be created by an advertising brochure. See, e.g., *Hawkins Constr. Co.*

---

[9] THE JUDGE: "The difficulty I have with this line of questioning [about leaks in the pool] . . . is [that] we're talking now about simply defects of workmanship in the pool and it seems to me, we're straying from what is unfair and deceptive practices."

PLAINTIFF'S COUNSEL: "I would agree with your Honor if the defendant had not represented and warranted that the particular pool that he would install would be a pool of the highest quality. Therefore, if it is not of the highest quality, it is a false and fraudulent misrepresentation; therefore a violation of Chapter 93A."

v. *Matthews Co.*, 190 Neb. 546, 564-565 (1973). Not every statement in an advertising brochure, however, constitutes an express warranty.

The UCC defines an express warranty, in relevant part, as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." G. L. c. 106, § 2-313 (1) (*a*), inserted by St. 1957, c. 765, § 1. Since "common experience discloses that some statements or predictions cannot fairly be viewed as entering into the bargain" (UCC § 2-313 Comment 8), the UCC provides that "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." G. L. c. 106, § 2-313 (2). Some statements relating to the goods are merely "seller's talk" or "puffing" and do not create express warranties. See, e.g., *Jacquot* v. *Wm. Filene's Sons*, 337 Mass. 312 (1958) (statement that product was "wonderful" held seller's talk); *Ireland* v. *Louis K. Liggett Co.*, 243 Mass. 243 (1922) (merchandise said to be "very good, very popular, you will like it, we sell a great deal of it, and people don't find fault with it, they seem to be satisfied with it"; same); *Rosenbush* v. *Learned*, 242 Mass. 297 (1922) (words "prime, elegant merchandise"; same).[10] See also *Axion Corp.* v. *G.D.C. Leasing Corp.*, 359 Mass. 474, 481-483 (1971). The language relied upon by Hannon seems to be, at most, "an affirmation merely of the value of the goods" (G. L. c. 106, § 2-313 [2]); it does not appear to constitute an express warranty.

Even if we assume, however, that "designed and constructed to the highest quality specifications" constitutes an express warranty, Hannon has not demonstrated that Aquatech breached that warranty. Hannon has not argued on appeal that the design of the pool was flawed. With respect to its construction, the trial judge found that the necessary

---

[10] These cases were decided under the statutory predecessor to the UCC. Enactment of the UCC, however, did not change prior law with respect to "seller's talk." See Annotation to G. L. c. 106, § 2-313, Mass. Ann. Laws, Uniform Commercial Code at 222 (1976).

repairs to the pool would take no more than one-half day to accomplish. Aquatech has offered to make those repairs. Hannon has not proved that, once the repairs are made, he will not have a pool "constructed to the highest quality specifications."

3. *Use of arbitration clause as G. L. c. 93A violation.* We are not convinced by Hannon's argument that Aquatech's use of an arbitration clause in the contract violates G. L. c. 106, § 2-316A, and hence (through Regulation VII B, apparently) G. L. c. 93A. Even if we assume that an inground, gunite swimming pool is encompassed within the phrase "consumer goods, services or both,"[11] as used in § 2-316A, and we further assume that the arbitration clause in question excludes, limits, or modifies a consumer's remedies for breach of express or implied warranties, § 2-316A merely declares *unenforceable* language which attempts to exclude, limit, or modify such remedies. Section 2-316A does not declare such language illegal, nor does any regulation of the Attorney General which has been pointed out to us.[12]

Inclusion of a clause in a contract allowing one party, but not the other, to demand arbitration is not "unconscionable" per se and hence a violation of the Attorney General's Regulation XV, 20 Code Mass. Regs., Part 5, at 39 (1975) ("an act or practice is a violation of Chapter 93A, section 2 if . . . [i]t is oppressive or otherwise unconscionable in any respect"). Hannon argues that the voluntary nature of arbitration in general is undercut, in this case, by the alleged "contract of adhesion" nature of the document. Hannon introduced no evidence that there were not other companies whose services he could have engaged to construct his pool. He admitted at trial that he had a college education; that he

---

[11] Aquatech argues strenuously that the pool is real estate and therefore not covered by G. L. c. 106, § 2-316A, or any other section of art. 2 of the UCC.

[12] Section 2-316A, as amended by St. 1973, c. 799, § 1, also states that "[t]he provisions of this section may not be disclaimed or waived by agreement." This sentence does not declare attempted waivers or disclaimers illegal.

was familiar with contracts and signed them in the course of his employment; that he read the Aquatech contract carefully before he signed it. On the record, Hannon is in no position to assert that he would not have signed the contract if the arbitration clause had come to his attention. As to him, inclusion of the arbitration clause in the contract was not a deceptive practice. See *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 299-300 (1980). Whether the contract he signed with Aquatech did or did not include an arbitration clause "could [not] reasonably be found to have caused [Hannon] to act differently from the way he otherwise would have acted." *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 51 (1979).

4. *"Low-balling" and "commercial bribery" as G. L. c. 93A violations.* If proved, the conduct referred to by Hannon as "low-balling" and "commercial bribery" might well constitute violations of G. L. c. 93A. Hannon did not prove his charges to the satisfaction of the trial judge. We have reviewed the record. We see no reason to disturb the judge's conclusion that Aquatech's conduct with respect to Hannon's charges of "low-balling" and "commercial bribery" did not constitute unfair or deceptive practices proscribed by c. 93A.

5. *Stay of proceedings on complaint alleging G. L. c. 93A violations pending arbitration.* Pursuant to G. L. c. 251, § 2, and the arbitration clause, a Superior Court judge ordered the parties to arbitration in accordance with the terms of their contract and stayed proceedings on Hannon's complaint. Hannon filed a motion to stay reference. When his motion was denied, he submitted to arbitration under protest, reserving his rights under G. L. c. 93A. After the arbitrator made an award, Hannon filed a motion to vacate that award. On appeal, he argues essentially that the order forcing him to submit to arbitration and staying proceedings on his complaint was error. We hold only that the order was erroneous with respect to the stay imposed on judicial proceedings to resolve Hannon's G. L. c. 93A claims.

General Laws c. 93A, § 9 (6), inserted by St. 1973, c. 939, reads as follows: "Any person entitled to bring an action under [G. L. c. 93A, § 9] shall not be required to initiate, pursue or exhaust any remedy established by any regulation, administrative procedure, local, state or federal law or statute or the common law in order to bring an action under [§ 9] or to obtain injunctive relief or recover damages or attorney's fees or costs or other relief as provided in this section. Failure to exhaust administrative remedies shall not be a defense to any proceeding under this section, except as provided in paragraph seven." We interpret this section as precluding the issuance of a stay such as was ordered in this case. While arbitration pursuant to a contract does not fall neatly into the categories of remedies listed in G. L. c. 93A, § 9 (6), we think it comprehended within either "common law" or statutory remedies. We note especially that many agreements to arbitrate were not enforceable in Massachusetts prior to enactment of G. L. c. 251. See *Lakube* v. *Cohen*, 304 Mass. 156 (1939). That G. L. c. 93A, § 9 (7), permits a stay of G. L. c. 93A actions only in certain limited circumstances not present here is further evidence of the Legislature's intent to preclude stays in the absence of those limited circumstances.

Since Hannon's G. L. c. 93A claims were not properly before the arbitrator, the trial judge's first ground of decision — that the arbitrator's award foreclosed him from further consideration of those claims — was erroneous.[13] Aqua-

---

[13] In reaching this conclusion, we have looked to Federal precedents for guidance. See G. L. c. 93A, § 2 (*b*). We note that the Magnuson-Moss Warranty Act (Act), 15 U.S.C. § 2301 et seq. (1976), provides for an informal dispute settlement mechanism — similar to arbitration — to deal with consumer warranty complaints. 15 U.S.C. § 2310 (1976). Under the Act and Federal Trade Commission regulations promulgated pursuant to the Act, decisions rendered by the "arbitrator" are admissible in evidence in any civil action arising out of a warranty obligation and related to a matter considered in the informal proceeding, but such decisions are not legally binding on any person. 15 U.S.C. § 2310 (a) (3) (1976). 16 C.F.R. 703.5 (j). See generally H. Alperin & R. Chase, Consumer Rights and Remedies § 78 (1979).

tech's contractual counterclaims, however, were properly before the arbitrator: nothing in our decision today forecloses binding arbitration of such claims.

We do not agree with Hannon's assertion that Aquatech's insistence on enforcing its right to arbitration constituted an unfair or deceptive act or practice proscribed by G. L. c. 93A, § 2 (*a*). Aquatech's conduct could neither be characterized as deceptive nor, in light of the heretofore unsettled state of the law regarding the interplay between arbitration and judicial resolution of G. L. c. 93A claims, do we find that Aquatech's conduct was unfair.[14]

6. *Attorney's fees and expenses.* "The traditional practice of this court has been to allow attorney's fees, as between opposing parties in litigation, in four limited instances: (1) as costs, in accordance with specific statutory provisions or court rules . . . ; (2) as damages, in certain circumstances . . . ; (3) in accordance with statutory provisions . . . ; or (4) pursuant to a valid contractual provision or stipulation." *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 303, 311-312 (1976). General Laws c. 93A, § 9 (4), directs a court, on a finding that a defendant has violated G. L. c. 93A, § 2, to award the plaintiff attorney's fees. Hannon asserts that he should have been awarded fees under this statutory provision. Our holding that Aquatech committed no c. 93A violation forecloses an award of fees to Hannon under G. L.

---

[14] We reject Hannon's contention that the trial judge, in making detailed findings in support of his conclusion that Aquatech's conduct did not violate G. L. c. 93A, failed to pay proper attention to Hannon's c. 93A claims because of his "inordinate reliance on the arbitrator's findings." There is no indication that the judge made use of the arbitration transcripts (which were introduced in evidence at trial) for anything more than the statements of witnesses contained therein. Nor does the record demonstrate that Hannon was prevented from introducing any evidence in support of his claims that might have affected the resolution of his case. With respect to the judge's resolution of issues of credibility, we note that many of the same witnesses testified at both the arbitration hearings and the trial, including Hannon and the president of Aquatech.

c. 93A, § 9 (4).[15] As a result, there is no statutory authorization for an award of fees to Hannon.

The only other possible ground on which Hannon might be entitled to an award of attorney's fees is paragraph 4.1 of the contract, by which Hannon agreed that the "prevailing party" in an action brought to determine or enforce rights under the contract should be entitled to recover all costs and expenses, including attorney's fees, from the other party. Aquatech, however, is the "prevailing party" under paragraph 4.1 of the contract. See *Smith* v. *Wenz*, 187 Mass. 421, 425 (1905) ("prevailing party" under statute allowing same to recover costs is party in whose favor judgment is entered). Nonetheless, the public policy expressed by the Legislature in G. L. c. 93A of allowing consumers access to the courts to vindicate their rights, without first exhausting other remedies, moves us to disallow recovery by Aquatech under the contract for attorney's fees and expenses incurred in forcing Hannon into arbitration as a precondition to asserting his rights under G. L. c. 93A. In addition, despite the trial judge's diligent efforts, a significant degree of overlap occurred between the evidence introduced and theories raised during the arbitration proceedings and at trial. To the extent that the attorney's fees and expenses incurred by Aquatech are attributable to this duplication of effort, Hannon should not be held liable for those fees and expenses.

We note also that the contract provision involving attorney's fees applies only to such fees and expenses (1) incurred by either party as a result of actions or proceedings brought for the purpose of determining or enforcing either party's rights *under the contract*, or (2) incurred by Aquatech as a result of attempts to "enforce collection of any payment re-

---

[15] Even if Aquatech had committed violations of G. L. c. 93A, Hannon could have recovered little, under the statute, in the way of attorney's fees and expenses. Most of those fees and expenses were incurred after Hannon received Aquatech's reply to his G. L. c. 93A demand letter. We agree with the trial judge's finding that Aquatech's reply contained a reasonable offer of settlement. Hannon rejected the offer. The statute bars an award of fees and expenses that were incurred after rejection of such an offer. G. L. c. 93A, § 9 (4).

quired to be made" *under the contract.* Under either clause Aquatech cannot recover the fees and expenses attributable to litigation of the issues raised by Hannon's unsuccessful attempt to obtain class certification. In raising class issues, Hannon was not attempting to determine or enforce contractual rights; the second clause is equally inapplicable.

On remand, the trial judge must ascertain the amount of Aquatech's attorney's fees and expenses that is attributable to (1) pretrial litigation involved in Aquatech's successful effort to force Hannon to submit to arbitration, (2) preparation and presentation of evidence bearing on Hannon's c. 93A claims that was introduced at trial after having been introduced previously during the arbitration proceedings, and (3) preparation and presentation of evidence introduced at trial on the issues raised by Hannon's attempt to obtain class certification. The amount so determined should be deducted from the award of fees and expenses granted, pursuant to the contract, to Aquatech. Each party shall bear his own fees, expenses and costs attributable to this appeal and to proceedings on remand.

7. *Disposition.* The judgment is reversed with respect to the award of attorney's fees and expenses to Aquatech. The case is remanded to the Superior Court for entry of an appropriate award of fees and expenses in accordance with this opinion.

*So ordered.*