Furnari, J.
This is an action in contract and tort arising out of an oral agreement by defendant Mario C. Covino, III (“Covino”) to provide landscaping design services, labor and materials to plaintiff James A Penta (“Penta”). Penta’s complaint sought recovery in five counts for the defendant’s alleged breach of contract, breach of express and implied warranties, misrepresentation and G.L.c. 93A unfair and deceptive practices.
Covino’s answer alleged, inter alia, that any loss sustained by Penta was proximately caused by his own failure to maintain the trees and shrubs in question, and that Penta’s demand letter failed to satisfy the requirements of G.L.c. 93A Covino also counterclaimed for extra labor and materials supplied to Penta.
After an unduly protracted trial, the court found for Penta on both Covino’s counterclaim and all five complaint counts, assessed damages on each count, and entered judgment in the amount of $21,358.00 in punitive G.L.c. 93A damages, plus $17,900.00 in attorneys’ fees and $4,048.22 in costs. Covino thereafter requested a report to this Division on multiple charges of error in the court’s evidentiary rulings, disposition of both parties’ requests for findings of fact and rulings of law, denial of Covino’s mid-trial motion for Rule 41(b) (2) dismissal and post-judgment motions for amendment of findings and a new trial, and the imposition of sanctions on defendant’s counsel.
The trial court elected to sign the first and only draft report submitted by defendant’s counsel, without amendment and without a hearing, despite both a Rule 64(c) (5) extension of time for report settlement by this Division and a request for hearing by the plaintiff. The absence of any hearing is apparent from both the docket and from the failure of the “report” to bear any effective resemblance either to Form 33 (Draft Report Model) or to the concise record of trial court evidence and proceedings envisioned by Rule 64(c). See, e.g., Dillon v. Framingham, 288 Mass. 511, 513 (1934). The need for an organized, clear record was particularly acute in this case which involved multiple days of testimony by the parties and numerous experts as to planting procedures, growth patterns and proper maintenance of more than 30 different species of trees and shrubs, and an identification and condition report on over 230 different plants on Penta’s property for each growing year from 1986 to the time of trial in 1991. The report signed by the trial judge consists, however, of 245 rambling pages, devoid of index, with a 35 page addendum. In lieu of a narrative summary of trial evidence, the report sets forth 65 pages of what appear to be informal notes made from a review of the trial court tapes, sprinkled with occasional fragments of actual testimony and portions of selected trial exhibits, all in a disjointed, if not incoherent, style which frequently *5 eschews complete sentences.[1] The remaining 185 pages are inexcusably cluttered with duplicate and even triplicate copies of all manner of pleadings, motions, requests, exhibits and rulings. Even in a case of less factual complexity, there could be little justification for so complete a disregard of the duty imposed by Rule 64 to fashion a trial court record suitable as a vehicle for the presentation of appellate issues. See generally, Keeney v. Ciborowski, 304 Mass. 371, 373-374 (1939).
From the morass certified by the trial judge as containing all the evidence material to the questions reported, the following can be gleaned. Plaintiff James A Penta, a lawyer, financial consultant, real estate developer and property manager, contacted twenty-three year old Mark C. Covino, a local landscaper, about landscaping the grounds and boundaries of his Winchester home. Impatient to enjoy the effects achieved only from years of normal plant growth and development, Penta sought an instant, fully landscaped effect He informed Covino of his specific preferences for, e.g., a variety of evergreens, flowering shrubs, dogwoods and a hemlock border along the property line, and Covino included these and other species in a landscaping proposal. Penta then altered Covino’s plan by eliminating more than 125 trees and shrubs and rejecting certain planting sites and formations. Pursuant to their eventual oral agreement Covino planted 213 trees and shrubs in August and September, 1986, and, at Penta’s later request, an additional 5 trees in April 1987. There was no agreement for Covino’s care and maintenance of the plants, and Penta in fact informed Covino that he and his family would maintain the landscaping. Among other maintenance recommendations, Covino suggested that Penta contact Chem Lawn to fertilize and prune the plants and advised Penta to install both a sprinkler and a drainage system.
On May 23, 1987 and July 6, 1987, Penta sent written letters of complaint to Covino that, inter alia, “plants and trees [were] drying and dying”; rhododendrons, white pines and junipers were doing poorly; two trees had been “windblown out of line”; there was winter kill in one tree that had not been pruned and an overabundance of weeds; there had been no deep fertilizing etc. Covino twice returned to the property in response to these letters. Athough none of the plants had died, Covino endeavored to address Penta’s complaints by planting additional rhododendrons, junipers, white pines and other plants, by staking trees, and by arranging for deep fertilizing to be done by an independent service. Penta responded with a third letter of September 28, 1987 which informed Covino that experts he had hired to analyze the “retardation of lawn, tree and shrub growth and the loss or damage to trees shrubs and junipers previously reported” attributed the same to Covino’s improper preparation and planting of the trees and shrubs. No specific plants were mentioned. The letter stated that uprooting and replanting would increase loss, that Penta might turn to Covino’s supplier for “replacement of products”, and that Penta was not waiving his right to partial or complete recovery of all monies paid to Covino for labor and materials.
By letter of July 27, 1988, Penta’s lawyer demanded G.L.c. 93A relief in the amount of $25,000.00. The letter stated, in pertinent part:
As you know from prior correspondence . . . from Mr. Penta, the details of which I will not repeat but to which I direct your attention, numerous deficiencies in your services have been experienced and much of the landscape has died or is dying.
The failure to design, plant, and care for the landscaping materials in a pro *6 fessional manner was in contravention of the terms of the agreement...
As a proximate consequence of the actions taken by your employees or agents, the value of the landscaping materials has decreased by at least one half... [emphasis supplied].
After an unsatisfactory response from Covino’s lawyer, this action ensued.
1. Twenty-six of Covino’s thirty-one requests sought rulings that, as a matter of law, the evidence “required” a finding in his favor and did “not warrant” a finding in Penta’s favor on each of the five complaint counts. The trial judge treated each of these requests as “proposed findings of fact at odds with my findings in Section I.”[2] Such disposition was error as Covino’s requests were in form and substance proper rule 64(b) requests for rulings of law as to the insufficiency of the evidence to satisfy Penta’s burden of proof. Hooper v. Kennedy, 320 Mass. 576 (1947); Boston Note Brokerage Co. v. Pilgrim Tr. Co., 318 Mass. 224, 228 (1945). Further, such error was not rendered harmless by the court’s findings of fact. Upon review of such findings in the light of the reported evidence and applicable law, we are left with the definite and firm conviction that a mistake has been made. Tamerlane Realty Tr. v. Board of App. of Provincetown, 23 Mass. App. Ct. 450, 454 (1987). In the interests of justice, a new trial is in order.
2. No jurisprudential interests would be furthered by a detailed analysis of the more than sixty instances of trial court error argued by the defendant. To the extent that it may be of assistance to the court upon a retrial of this matter, we highlight only a few of the more salient problems.
With respect to Penta’s claim for breach of express warranties, the report is wholly devoid of any evidence to sustain Penta’s burden of proof, see generally, General Dynamics Corp. v. Federal Pacific Elec. Co. 20 Mass. App. 677, 685 (1985), that any plant actually died within the one year guaranty period. The report does indicate that Penta failed to give timely notice to Covino to enable him to replace plants which Penta alleges were lost in the first year, see Hayes v. Ariens, 391 Mass. 407, 410 n.2 (1984), other than those referenced in Penta’s first two letters for which Covino supplied additional or substitute plants. Penta failed to establish the existence of any other express warranties. Even assuming arguendo that the “seller’s talk” set forth in a Covino advertising flyer could be deemed a warranty or affirmation of fact, but ct Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 823 (1982), Penta’s testimony that he could not recall when or how he had acquired the flyer precluded the necessary finding that such affirmation became part of the “basis of the bargain” between the parties so as to constitute an express warranty. G.L.C. 106, §2-313(1) (a). See generally, USM Corp. v. Arthur D. Little Sys. Inc., 28 Mass. App, Ct 108, 119 (1989).
An implied warranty of fitness for a particular purpose depends on evidence of a specific or intended purpose distinct from the ordinary purposes for which the goods in question may be used. Fernandes v. Union Bookbinding Co., 400 Mass. 27, 25 (1987); Hannon v. Original Gunite Aquatech Pools, Inc., supra at 821. The reported evidence discloses no purpose for the plants purchased by Penta other than the ordinary and general landscaping purposes of property beautification and boundary definition. Further, the report states that Penta’s counsel limited his implied warranty claim at trial to Covino’s services rather than the plants themselves. Section 2-315 of G.L.c. 106, which formed the express basis of the court’s ruling and finding on Penta’s implied warranty claim, does not apply to services per se. See Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co., 25 Mass. App. Ct. 530, 534 (1999); Raffel v. Perley, 14 Mass. App. Ct. 242 (1982).
An adequate demand letter was a prerequisite to Penta’s G.L.c. 93A claim. Such a *7 demand letter must describe the unfair conduct and identify the loss or injury claimed in sufficient and specific detail to apprise the defendant that his conduct has violated the statute, that relief is warranted and that a reasonable settlement should be made. Spring v. Geriatric Auth., 394 Mass. 274, 287 (1985);Entrialgo v. Twin City Dodge, Inc, 368 Mass. 812 (1975); Piccuirro v. Gaitenby, 20 Mass. App. Ct. 286, 292 (1985). Penta’s demand letter alleged that more than half of the plants supplied by Covino were “dead and dying” within the first year. However, by the time of trial five years later, Penta’s allegations and evidence had materially changed. He testified:
My major complaint overall is one of aesthetics. Very very poor curb appeal, over-crowded, different species of low shrubs growing into each other as a clump so as to have no clear definition.... because of number of the mass of plants, particularly those growing into each other, there is no aesthetic, no clear definition of plants....
3. On the basis of the foregoing, and other errors and deficiencies in this matter, the judgment for the plaintiff is vacated and this case is returned to the Woburn Division for a new trial.

llustrative of the worst aspects of the report is page 63, which reads in its entirety:
“Penta did not
This reflects what you agreed to before big begins
Covino directed by Penta to plant hemlock in straight line by his”

he judge made no special findings of fact, but, with limited exceptions, simply adopted the findings of fact proposed by Penta.